Argued January 20, affirmed March 12, petition for rehearing
denied April 7, 1970. Petition for review denied by
Supreme Court May 19, 1970

STATE OF OREGON, *Respondent, v.*
GERALD VAN NOSTRAND,
*Appellant.*
465 P2d 909

*J. Marvin Kuhn*, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Jacob B. Tanzer*, Solicitor General, Salem, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before SCHWAB, Chief Judge, and FORT and BRANCHFIELD, Judges.

FORT, J.

The defendant was convicted of perjury and appeals, asserting error in receiving hearsay evidence in the form of admissions made by a codefendant, and in permitting a police officer to testify as to admissions made by the defendant before he was warned of the right to remain silent and to the assistance of counsel.

The defendant and one Vester were riding on a motorcycle which was involved in a collision in which it struck the right rear fender of a car which was turning into a restaurant parking lot one evening after dark. Following the collision, defendant was beneath the motorcycle. When the cycle was lifted from defendant he hobbled over and lay down on a raised flower divider. When a police car arrived, the officer, the driver of the car and Mr. Vester sat in the police car discussing the accident. During this conversation Mr. Vester told the other two that he had been thrown over defendant's shoulder, and that

he was not driving the motorcycle. The defendant at this time was on his way to the hospital in an ambulance.

After this conversation at the scene, the officer and Mr. Vester went to the hospital. They found the defendant in the emergency room. At this time the officer had no information other than that defendant was driving. He conversed there with the defendant. Concerning this, the officer testified:

"Q * * * What, then, if anything, transpired between you and Mr. Van Nostrand?

"A Well, I attempted to question him in regards to the details of the accident. At that point, a conflicting story arose between what Mr. Vester had originally told me and what he now told me.

"Q Now, when you say 'he,' who are you referring to?

"A Mr. Van Nostrand.

"Q What was the general nature of what Mr. Van Nostrand told you about the accident at that point?

"A Well, he denied being the driver of the motorcycle and said Mr. Vester was now or had been the driver of the motorcycle at the time of the accident.

"Q And what was your response, if any?

"A Well, I had no immediate response. I didn't believe him. I wrote him a citation for driving while suspended.

"Q Did you indicate anything with regard to what you learned from Mr. Vester to Mr. Van Nostrand?

"A Yes, I did. I told him that Mr. Vester had said, well, you were driving the motor vehicle. And he said, 'No, I wasn't. Mr. Vester was.' And

he said to Mr. Vester, 'You tell him. Go ahead. Tell him that you were driving.'

"And Mr. Vester didn't say anything.

"Q Was there any further conversation then after that?

"A Just minor details."

It is conceded that the officer gave defendant no *Miranda*[①] warning at the hospital.

Subsequently, defendant was tried on the charge for which he had been cited—operating a motor vehicle while his operator's license was suspended. At that trial, under oath he swore that he was not the operator of the motorcycle at the time of the accident. The indictment for perjury followed.

Following the incident at the hospital, Mr. Vester changed his story and stated that he had been driving the motorcycle. He, too, subsequently was indicted for perjury committed at the same trial, jointly with the defendant.

During the perjury trial an eyewitness identified Mr. Van Nostrand as the driver and Mr. Vester as the passenger.

The final witness called by the state at the perjury trial was an insurance adjuster. The day after the accident he had interviewed Mr. Vester at the latter's home. Over an objection based on hearsay, he was permitted to testify:

"Q Now, did he say anything with regard to statements that he had made to the police officer that night?

"A Yes. He said that he didn't know that Mr. Van Nostrand didn't have a driver's license or else

---

[①] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

he would have told the police that night that he was driving the motorcycle.

"Q Did he say anything with regard to taking the blame for this sort of thing?

"A. He said that on one prior occasion that he had, as he put it, he had taken the rap for a member of their club who didn't have a driver's license and was stopped.

"Q Did he indicate that Mr. Van Nostrand was a member of the club?

"A Yes."

The state contends that the above was admissible under ORS 41.900(6), which provides:

"Evidence may be given of the following facts:
"* * * * *

"(6) After proof of a conspiracy, the declaration or act of a conspirator against his coconspirator, and relating to the conspiracy."

In *State v. Thomas,* 240 Or 181, 400 P2d 549 (1965), the court said:

"Such testimony cannot be introduced before the state produces sufficient evidence to justify a jury in finding that a conspiracy did, in fact, exist, *State v. Booth,* 82 Or 394, 161 P 700 (1916), but once the state has put on sufficient evidence of a conspiracy, the hearsay statements of conspirators are competent evidence against other members of the conspiracy. *State v. Keller,* 143 Or 589, 599, 21 P2d 807 (1933), quoted with approval in *State v. Gardner,* 225 Or 376, 384, 358 P2d 557 (1961)." 240 Or at 188.

■ The defendant contends there is no evidence of a conspiracy.

The state points to the conversation in the hospital room between the defendant, Mr. Vester and the of-

ficer previously set out. The trial court ruled this evidence, together with that supplying the motivation —namely, that defendant was driving while his operator's license was suspended—was sufficient to enable the matter of the existence of a conspiracy to be submitted to the jury under appropriate instructions. No question is raised as to the sufficiency of these instructions.

In *State v. Ryan,* 47 Or 338, 82 P 703, 1 LRA(ns) 862 (1905), the court stated:

"A conspiracy may be proven by showing the declarations, acts and conduct of the conspirators. It is seldom possible to establish a specific understanding by direct agreement between the parties to effect or accomplish an unlawful purpose. Usually, therefore, the evidence must be necessarily circumstantial in character, and will be sufficient, if it leads to the conviction that such a combination in fact existed. Thus, if it be shown that the conspirators were apparently working to the same purpose,—that is, one performing one part and another another,—each tending to the attainment of the same object, so that in the end there was apparent concert of action, whether they were acting in the immediate presence of each other or not, it would afford proof of a conspiracy to effectuate that object: *Mussel Slough Case* (C.C.) 5 Fed. 680; *United States v. Sacia* (D.C.) 2 Fed. 754. Such proofs would evidence prima facie a conspiracy. * * *" 47 Or at 344.

See also *State v. Gagnon,* 2 Or App 261, 465 P2d 737 (decided February 26, 1970), *review denied* (1970).

In *State v. Parker,* 225 Or 88, 356 P2d 88 (1960), the court said:

"It is recognized that the courts have been most liberal in permitting *very slight* evidence to be

sufficient to permit a jury to find a conspiracy. * * *" (Emphasis supplied.) 225 Or at 92.

We agree with the trial court that it was a question for the jury to determine.

The second contention is that defendant's statement in the hospital was inadmissible in this trial because he was not given the *Miranda* warning. We are not faced with the question of its admissibility at his trial on driving with a suspended license.

The offense for which the defendant was tried here was perjury. It not only had not been committed at the time the officer saw him in the hospital, it could not have been. He was then only a "focal suspect" in the process of being arrested for driving a motor vehicle while his license was suspended. This, however, had nothing to do with the fact that some months later he perjured himself in the trial therefor.

*Escobedo*[2] and *Miranda* are designed to insure to a defendant or focal suspect the effectiveness of the protection guaranteed him by the Fifth Amendment with respect to offenses already committed or attempted.

■ The Sixth Amendment likewise assures to a person only with respect to offenses committed or attempted that *"In all criminal prosecutions,* the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." (Emphasis supplied.) U.S. Const. amend. VI.

Each of these provisions is available to a defendant, when appropriate, with respect to offenses already

---

[2] Escobedo v. Illinois, 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964).

committed or attempted. Neither is designed to dissuade a person from committing or attempting to commit a crime at some future and undetermined time.

█ In the case at bar the crime of perjury had not been committed—nor was it in the process of commitment. Van Nostrand was neither a defendant nor a focal suspect concerning the commission of a crime which had not yet been committed or attempted. He could not have been.

Both *Mathis v. United States,* 391 US 1, 88 S Ct 1503, 20 L Ed 2d 381 (1968), and *Orozco v. Texas,* 394 US 324, 89 S Ct 1095, 22 L Ed 2d 311 (1969), dealt with statements made by a person who subsequently became the defendant concerning offenses which had already been committed by him at the time the statements were made. We think these cases have no application here.

The trial court correctly allowed the statement of the defendant here challenged to be admitted.

The judgment is affirmed.