Argued June 21, affirmed December 27, 1971, petition for rehearing denied January 26, petition for review denied June 27, 1972

STATE OF OREGON, *Respondent, v.*
EDWARD RALPH JORGENSEN, *Appellant.*

492 P2d 312

[ 1 ]

*Gary D. Babcock*, Public Defender, Salem, argued the cause and filed the brief for appellant.

*Jacob B. Tanzer*, Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Defendant Edward Jorgensen, his brother Carl Jorgensen, and Robert Brom were jointly charged in a two-count indictment with the murders in the first degree of Larry Peyton and Beverly Allan in Multnomah County on November 26, 1960.

The state chose to go to trial first on the charges against defendant Edward Jorgensen.

After a hard-fought trial lasting nearly two months, the jury found defendant guilty of second degree murder on Count I (Larry Peyton death), and guilty of first degree murder on Count II (Beverly Allan death).

On appeal defendant contends the trial court

erred: (1) in overruling defendant's motions for judgment of acquittal and directed verdict because the state's proof was "utterly unreasonable and contrary to all human experience"; (2) in denying defendant's motion for a psychiatric examination of two of the state's female witnesses, "Nikki" Essex and Lorraine Jorgensen, and admitting their testimony into evidence; (3) in failing to exclude on its own motion the testimony of Leo Batchelor; (4) in denying defendant's motion for mistrial following introduction into evidence of a prior conviction of co-indictee Robert Brom; (5) in failing to declare a mistrial based upon the alleged misconduct of the prosecutor, certain state's witnesses, the asserted misconduct and incompetence of the defense counsel and of the trial judge; (6) in giving erroneous instructions with reference to disputable presumptions of an intent to murder from the deliberate use of a deadly weapon, of malicious and deliberate intent in the commission of an unlawful act, and that a person intends the ordinary consequences of his voluntary act; and (7) in denying defendant's motion to supplement the record with matters which he contends would have established the existence of a reasonable doubt for prosecutor's and defense counsel's failure to perform properly their responsibilities as officers of the court in presenting material evidence.

After supper on the evening of November 26, 1960, the two victims, Larry Peyton and Beverly Allan, left the Peyton family home in young Peyton's automobile for a date together. They did not return.

On the evening of the following day police discovered Peyton's body in his automobile, parked on a dead-end road in a remote area of Portland's west

hills. He had been stabbed 20 times and badly beaten. Beverly Allan's blood-stained coat, her necklace, front portion of her blood-stained blouse and five buttons therefrom were found in the car. Her glasses were found in the roadway by the car door.

Over a month later the girl's body was discovered off Sunset highway, 30 miles west of Portland. Her sweater, undergarments and the remaining portion of her blouse were found nearby. Two pieces of nylon cord were found on her body. The cord matched another piece of nylon cord found near the Peyton car. Physical evidence and expert testimony indicated that she had been sexually attacked and had died from strangulation either by use of a ligature or manually.

■ ■ The trial judge denied a motion for judgment of acquittal at the close of the state's case. Defendant elected not to stand on his motion and presented evidence in his defense. On appeal we must consider all the evidence and affirm the trial court if the record as a whole contains sufficient evidence to support a verdict against defendant. *State v. Lamphere,* 233 Or 330, 378 P2d 706 (1963); *State v. Gardner,* 231 Or 193, 372 P2d 783 (1962); *State v. Nix,* 7 Or App 383, 491 P2d 635 (1971).

We have examined the entire record, including over 5,000 pages of testimony by 126 witnesses, as well as the tape-recorded psychiatric interviews with "Nikki" Essex and other exhibits which were transmitted to this court. The evidence of defendant's alleged guilt offered by the state was part direct, part circumstantial. The latter evidence was exceptionally lengthy and involved.

The state's proof considered in its entirety was sufficient to take the case to the jury; the court prop-

erly denied defendant's motion for a judgment of acquittal. *State v. Zauner,* 250 Or 105, 441 P2d 85 (1968); *State v. Freeman,* 4 Or App 627, 481 P2d 638 (1971). *Cf. State v. Crenshaw,* 6 Or App 55, 486 P2d 581 (1971).

Defendant assigns as error denial by the presiding judge (who was not the trial judge) of defendant's pretrial motion for psychiatric examination of "Nikki" Essex and Lorraine Jorgensen (no relation to defendant), and admitting their testimony in evidence.

In denying this motion the presiding judge stated the motion by its very nature was more properly addressed to the trial judge.

The mental capacity of a witness is a question for the trial court to decide in the exercise of sound legal discretion. *State v. Pace,* 187 Or 498, 506, 212 P2d 755 (1949). If defendant had any question of the mental capacity of either witness he should have renewed his motion before the trial judge. *State v. Pace,* supra at 506-07. Defendant does not claim, nor can we find in the record, that the motion was renewed before the trial judge. Instead, defendant's counsel apparently elected to attack the weight and credibility of this testimony (a) by cross-examination of these witnesses, (b) by cross-examination of the psychiatrists called by the state and (c) by the expert testimony of Dr. Paul Blachly, a psychiatrist, and Dr. Colin Slade, a clinical psychologist, both of whom testified on defendant's behalf. We fail to see how the trial judge can be charged with error when he was never presented the opportunity to rule. Nor do we believe the presiding judge abused his discretion in denying the requested psychiatric examination with

leave to renew it before the trial judge. *See State v. Clasey,* 252 Or 22, 446 P2d 116 (1968).

We now turn to the questioned testimony of the state's two key witnesses, "Nikki" Essex and Lorraine Jorgensen.

"Nikki" Essex, who was 18 years of age at the time of the alleged double murder, testified that she had been with defendant and the other two accused for the greater portion of the night of the two homicides; that while with them, and following a chance meeting with Peyton and Miss Allan at a downtown restaurant, she had been instrumental in persuading Peyton and Miss Allan to accompany them by separate car to a drinking party in the west hills area; that enroute friction arose between Peyton and defendants as the result of a near collision between the vehicles; that this was followed by a wild automobile chase through the west hills area with defendant and his companions in pursuit; that this chase culminated in the bloody fight at the spot where Peyton's lifeless body was later found; that although she was at the scene at the commencement of the fight, she did not see the actual slaying of Peyton; that thereafter defendant and the other two accused abducted Miss Allan and left the scene in defendant's automobile; that shortly thereafter they deposited her (Mrs. Essex) on the street near her home in downtown Portland.

The state offered psychiatric testimony that Mrs. Essex had suffered a loss of memory of the whole affair as the result of the trauma produced by the events of the evening; that her amnesia had been corrected and her memory restored by a series of psychiatric interviews by duly licensed physicians, which included hypnosis and the administration of sodium

amytal. At the request of defense counsel tape recordings of the medical interviews with Mrs. Essex were played for the jury following her sworn testimony.

The second witness, Lorraine Jorgensen, testified that defendant, some years after the two homicides, while intoxicated, had made several inculpatory statements in her presence concerning his participation in the two homicides. Evidence was offered by the defense showing that Lorraine had suffered from serious mental problems prior to and during trial.

■■ Since both of these witnesses gave their testimony concerning the issues of the case in open court and were subjected to prolonged and rigorous cross-examination by defendant's counsel before the jury, we do not believe that the fact they had been subjected to certain psychiatric and medical examinations and procedures prior to testifying, which were fully exposed in the evidence, would be a basis for disallowing their testimony. *Harding v. State,* 5 Md App 230, 246 A2d 302 (1968).[1] Nor would the fact that Mrs. Essex had told different stories at previous times be a basis for disallowing her testimony. *Harding v. State,* supra at 236. *See also State v. Yates,* 239 Or 596, 399 P2d 161 (1965). Defendant's strenuous objections to their testimony both at trial and on appeal go to its weight rather than its admissibility. *State v. Pace,* supra at 504. Credibility of both witnesses was for the jury. ORS 17.250, 44.370; *State v. Fleming,* 232 Or 412, 375 P2d 831 (1962).

---

[1] It has been held that the rule is to the contrary where the out-of-court statements made under hypnosis or so-called "truth serum" are sought to be introduced. State v. Harris, 241 Or 224, 405 P2d 492 (1965); People v. Harper, 111 Ill App 2d 204, 250 NE2d 5 (1969); State v. White, 60 Wash 2d 551, 374 P2d 942 (1962), *cert denied* 375 US 883 (1963).

Whether or not counsel, the court or the defendant believed Mrs. Essex and Mrs. Jorgensen is immaterial. The jury evidently believed this testimony. *See State v. Yates,* supra at 598.

■ ■ We do not find in the record any objection by the defense to the testimony of Leo Batchelor, who testified as to an alleged statement to him by defendant some years after the Peyton-Allan slayings that he, the defendant, had once killed a man, and that it bothered him to the point where he could not sleep at night. Since there was no objection to this testimony we have no error to review.

■ ■ This assignment concerns an incident in the trial when Hobbs, a friend of defendant who was called by the state, proceeded to give testimony at variance with his previous sworn statement taken by the state six months before trial. The prosecutor claimed surprise and sought to impeach by showing among other things that the witness was in fear of defendant and co-defendant Brom. The fact that Brom had previously been convicted of a felony was elicited from Hobbs in the course of this questioning and defendant moved for a mistrial on this account.

Brom's previous conviction for a felony committed jointly with Hobbs was relevant to the issue of Hobbs' hostility to the prosecution or fear of Brom, and hence had bearing on the witness's motives for changing his testimony.

■ This assignment directs us to the asserted misconduct of the prosecutor, certain state's witnesses, the asserted misconduct and incompetence of the defense counsel and of the trial judge.

As mentioned earlier, this trial was exceptionally long and hard-fought. Prosecution and defense

were equally vigorous in pressing their respective theories before the court and jury. There were many objections to evidence interposed by both sides. These objections were followed by frequent and often acrimonious exchanges directly between prosecutor and defense counsel, despite repeated admonishments by the court. Both counsel were on several occasions guilty of undue contentiousness.

However, viewing the entire record, we cannot say that the exchanges between counsel and the trial judge's handling of these encounters operated to deprive defendant of a fair trial. With regard to the claimed incompetence of counsel we find that defendant received a professionally adequate defense by retained counsel of his own choosing. We find no basis for any claim of denial of competent legal representation at this trial.

Additionally, defendant claims error because during final arguments to the jury two police officers who had performed much of the field investigation and had been called as witnesses by the state in the case, entered the crowded courtroom and seated themselves within the bar of the court.

After defendant's counsel discovered the officers' presence, he objected on the ground that this might have a tendency to influence the jury. The prosecutor accepted responsibility and explained their presence to the court by stating that they were "official men," that they were interested in hearing the oral arguments, and that there were no other empty seats in the courtroom. The judge immediately gave the following precautionary instruction to the jury:

> "* * * [Y]ou are not to attach any importance to this matter in the ultimate consideration of this case."

Rule 8.08, Rules of Court, Fourth Judicial District [Multnomah County], Circuit Court of the State of Oregon, adopted October 1, 1965, provides:

"CHAPTER VIII RULES RELATING TO COURTROOM CONDUCT AND ETHICS

"* * * * *

"During the trial of any case, or the presentation of any matter to the Court, no person, including members of litigants' families, shall be permitted within the bar of the courtroom proper, other than attorneys, court personnel, litigants and witnesses called to the stand. Persons without the bar shall not disturb the order of the Court."

■ Even in the absence of a court rule, the long-accepted practice in this state is that during trial only attorneys, litigants and court personnel may occupy seats within the bar in order to preserve the proper atmosphere of impartial administration of justice. However, the trial judge in his discretion may permit police officers and other specialists to occupy seats within the bar and in close proximity to trial counsel when their presence is required to assist counsel in the presentation of their case.

■ We agree that the two law enforcement officers should not have seated themselves within the bar during oral arguments. It was the court's responsibility to see that no unauthorized persons seated themselves in this portion of the courtroom at any time during trial. However, in view of the court's precautionary instruction to the jury, we do not think this incident was of sufficient magnitude to influence the outcome of the case and would not constitute a ground for overturning the conviction.

This assignment deals with the judge's instructions with reference to disputable presumptions of an intent to murder from the deliberate use of a deadly weapon, of malicious and deliberate intent in the commission of an unlawful act, and that a person intends the ordinary consequences of his voluntary act.

The record shows that defendant's trial counsel merely replied in the negative to the trial judge's query, "You don't feel that is a proper instruction?" He did not point out to the trial judge in what respect the instructions were allegedly erroneous. The judge invited a proper exception by his inquiry. However counsel failed to give any indication as to the basis of his objection.

Since the asserted error was therefore not preserved in the trial court, there is nothing properly before us to review on appeal. *U. S. National Bank v. Lloyd's*, 239 Or 298, 325-26, 382 P2d 851, 396 P2d 765 (1964); *State v. Charles*, 3 Or App 172, 175-76, 469 P2d 792, Sup Ct *review denied* (1970).

We do not consider that this asserted error comes within the "exceptional circumstances" of Rule 5.40[2] of this court. *State v. Charles, supra* at 176-77.

The trial judge correctly denied defendant's motion to supplement the record as to evidentiary matters not presented during trial in any manner. These matters did not constitute "additional parts of the pro-

---

[2] Rule 5.40:

"In appeals in actions at law no alleged error of the trial court will be considered on appeal unless regularly assigned as error in the appellant's opening brief, except that the court reserves the right to take notice of an error of law apparent on the face of the record."

ceedings" within the meaning of ORS 19.078 (3) and were therefore not properly includable in the record on appeal. *State v. Rutledge,* 2 Or App 374, 468 P2d 913 (1970).

Affirmed.