Argued January 20, affirmed March 9, petition for rehearing
denied April 5, petition for review denied June 27, 1972

STATE OF OREGON, *Respondent, v.* ROBERT
GORDON BROM (C-51748), *Appellant.*

494 P2d 434

*Gerald R. Pullen*, Portland, argued the cause for appellant. With him on the brief were John W. Danner and Colombo, Danner and Boston, Portland.

*John W. Osburn*, Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

This appeal arose out of the same indictment which was involved in *State v. Jorgensen*, 8 Or App 1, 492 P2d 312 (1971), Sup Ct *review denied* (1972).

The defendant Brom was charged therein, along with Carl and Edward Jorgensen, with the commission of two first degree murders. The defendants were tried separately with Brom's trial being the last.

The events in this case occurred during the weekend after Thanksgiving, 1960. On Friday, November 25, and Saturday, November 26, the defendant attended parties at the home of a Mrs. Stephens. At this time a group of young people, of which Brom was a member, regularly attended parties at various places in the Portland area. Although the particular makeup of any one party varied, there was a nucleus of people who appeared at most of the parties.

During that same weekend, on Saturday, November 26, Beverly Allan came to Portland to visit her boyfriend, Larry Peyton. She went to his home where they had dinner. About 9 p.m. the couple left Peyton's home to visit the Lloyd Center. A friend of Peyton's saw him in his car with a girl in downtown Portland between 10:30 and 11:30 p.m. that night. Another wit-

ness saw Peyton's car with its distinctive marking "Gabriel" on it, in downtown Portland between 10:30 and 10:45.

Peyton's car was seen on a dead-end road in the West Hills of Portland at different times on Sunday, November 27, by two witnesses who were in the area looking for property. One of the witnesses saw a man's leg inside the car.

Peyton's body was discovered by police officers looking for stolen vehicles on Sunday night. Beverly Allan's body was found about 30 miles west of Portland in January 1961.

The principal witness for the state was a Mrs. Essex who testified that she had been with Brom and Edward Jorgensen when they left the party on Saturday night to go on a "beer run." While they were on their way back to the party they saw Larry Peyton and Beverly Allan and asked them to come with them. The couple accepted the invitation and Peyton continued to drive his own car. The two cars began to race each other. Peyton forced the car which Brom was driving over to the curb. Brom's car was damaged, so he drove Mrs. Essex and Edward Jorgensen to a house on St. Helens Road where they got another car and picked up Carl Jorgensen. Soon afterward they saw the Peyton car again and began to chase it. They caught up with the Peyton car when it went down the dead-end road. Brom and the Jorgensen brothers went over to the Peyton car. At this point, Mrs. Essex testified, she ran away from the scene and down to the main road. Mrs. Essex never saw Larry Peyton again; but she did see Beverly Allan briefly in Brom's car when Brom and the Jorgensens drove by, picked her (Mrs. Essex) up on the main road and dropped her at home.

The state called numerous witnesses who corroborated various parts of Mrs. Essex's testimony. It will be unnecessary to set out additional facts except as required to discuss specific assignments of error.

■ Appellant makes nine assignments of error. His first two assignments contend it was error to deny defendant's motion to suppress the testimony of Mrs. Essex and to deny defendant's motion for a psychiatric examination of Mrs. Essex. These motions were made because Mrs. Essex had undergone hypnosis and sodium amytal treatments to help her regain her memory of the events that occurred on the night of Saturday, November 26.

■ Defendant here relies upon the same motion for psychiatric examination filed by defense counsel for Edward Jorgensen. The motion was not renewed at Brom's trial. As was the case with Edward Jorgensen, the tapes of Mrs. Essex's hypnotic and sodium amytal interviews were admitted without objection by defense counsel. These assignments were answered by this court's decision in *State v. Jorgensen,* supra, 8 Or App at 7-10.

■ Assignment number three is that the court erred in instructing the jury upon first degree murder by means of felony-rape. Appellant contends there was insufficient evidence of rape and insufficient evidence connecting the rape with the murder. Only the second theory was raised at trial. However, there was sufficient evidence that the victim had been raped. When she was found Beverly Allan was clothed only in ski pants. The rest of her clothes were scattered at the scene; and some of them had been torn, indicating that they had been yanked off. There was medical testimony of physical entry.

A rope had been tucked into Beverly Allan's ski pants. Marks on her neck indicated death by strangulation. The state's theory was that the girl had been killed shortly after the boy. This theory was supported by testimony based on a comparison between a broken fingernail found in Peyton's car and that portion of the nail remaining on the girl's body. The testimony was that because the nail showed little wear, the break and death had to occur close in time. Beverly Allan's watch had stopped at 11:22. The felony murder instruction was proper. *See State v. Zauner,* 250 Or 105, 111, 441 P2d 85 (1968).

■ Assignment number four alleges that the court erred in overruling defendant's objection to the testimony of one Robert Anderson. The testimony was admitted pursuant to ORS 41.900 which provides:

"Evidence may be given of the following facts:
"* * * * *

"(6) After proof of a conspiracy, the declaration or act of a conspirator against his coconspirator, and relating to the conspiracy.
"* * * * *"

Anderson testified that he had been in jail with his uncle, Holloway, in June 1969. At that time Brom was also in jail. As the "commissary man," Brom enjoyed a position which enabled him to get around the jail. Anderson saw notes being passed between Brom and his uncle and at one time overheard part of a conversation between the two men in which one of them said "* * * something like he was in it skin deep and that the police were going to find out." When Anderson asked his uncle what he and Brom were doing, Holloway said that he was going to testify in Brom's behalf and "take the murder rap" even though he

(Holloway) had had nothing to do with the Peyton-Allan murders.

The state introduced other evidence that Holloway and Brom had formed a conspiracy to suborn perjury. Holloway subsequently gave a story to the police and to the defense attorneys for Carl Jorgensen and Brom which implicated himself in the murders and absolved Brom and the Jorgensens. There were also witnesses who testified that Holloway was in Seattle, Washington, at the time he stated he had participated in the murders.

The existence of a conspiracy may be difficult to prove because a conspiracy by its very nature requires secrecy and subterfuge. As a result, in many cases, conspiracy can be shown only by circumstantial evidence consisting of the declarations, acts and conduct of the conspirators. *State v. Van Nostrand,* 2 Or App 173, 177-79, 465 P2d 909, Sup Ct *review denied* (1970); *State v. Parker,* 225 Or 88, 92, 356 P2d 88 (1960); *State v. Ryan,* 47 Or 338, 344, 82 P 703, 1 LRA (ns) 862 (1905); *State v. Moore,* 32 Or 65, 69, 48 P 468 (1897). The conversations and notes between the men and the fact that Holloway came forward with his story of the crime shortly after these meetings with Brom and over nine years after the murders had been committed provided sufficient proof of a conspiracy. *See, State v. Van Nostrand,* supra, *State v. Thomas,* 240 Or 181, 186-88, 400 P2d 549 (1965). Such conspiracy was an attempt by a defendant to alter evidence in order to affect the outcome of his trial and was relevant and admissible. *State v. Paquin,* 229 Or 555, 563, 368 P2d 85 (1962); *see, State v. Broadhurst,* 184 Or 178, 233, 196 P2d 407 (1948).

■ In connection with assignment five, defense

counsel objected to testimony of a detective concerning implied admissions made by the defendant during an interview. The interview took place at defendant's place of work during working hours. *Miranda*[1] warnings were not given, but the defendant was told he was free to leave at any time. The defendant testified *in camera* that he felt he was free to leave. The interview was part of an ongoing police investigation and occurred on September 7, 1967. The indictment charging the defendant was not returned until August 16, 1968. The fact situation in this case is similar to that in *State v. Travis*, 250 Or 213, 441 P2d 597 (1968), where the Oregon Supreme Court found an absence of "custodial" interrogation.

■ Defendant in his sixth assignment objected to the introduction into evidence of a .32 revolver on the grounds that there was insufficient evidence linking that gun to the defendant.

The gun was not the murder weapon. When Peyton's car was discovered it had a bullet hole in the windshield. A .32 caliber shell was found at the scene near the car. There was expert testimony that the revolver in question had discharged the shell and had fired the bullet which made the hole in the windshield.

Prior to the Saturday night party, the gun had been stored in a bar and restaurant which the defendant and his group frequented. Brom went to the bar the night of the murders. The first car he drove that night belonged to the bartender. After the murders the gun was found in an apartment which belonged to Mrs. Zimmer. Mrs. Zimmer's sister lived in an apartment next door. Brom had attended parties

[1] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

at Mrs. Zimmer's apartment in the past and he attended a party at the sister's on December 27, 1960. Mrs. Zimmer had been away from her apartment for several days around Christmas and when she got home she testified that the apartment was "a mess." Mr. Zimmer testified that the apartment "* * * looked like they had had a party there * * *." While they were cleaning the place Mrs. Zimmer found the revolver.

There was no error in admitting the revolver.

■ The seventh assignment of error involves hearsay testimony of Mrs. Manning, which was admitted over the objection of defense counsel.

Larry Peyton's death was caused by internal bleeding from multiple stab wounds inflicted by a sharp instrument approximately one-half inch wide with a thin blade.

When Ora Parkin attended the Friday night party he had a knife with those characteristics in his pocket. He had a fistfight with defendant Brom that night and at some point the knife was taken from him. The knife was found on Sunday at Mrs. Stephens' house and it appeared "* * * dirty and bloody."

Mrs. Harner had seen the knife before and knew it belonged to Ora Parkin. She testified that Brom and one of the Jorgensens had a fight over the knife around midnight at the Saturday night party. She heard "somebody" say, "Put that away * * *." Something else had been said but she did not remember the words. Mrs. Harner's testimony was admitted without objection.

The state then called Mrs. Manning as a witness. Mrs. Manning had not seen the fight and did not know

who spoke the words. Defense counsel objected to her testimony. The objection was overruled and Mrs. Manning was allowed to testify that she heard, "Put it away; it's hot."

Even if we assume Mrs. Manning's testimony was hearsay and should not have been allowed, this would not be grounds for reversal. There was ample evidence linking the defendant with the knife. *State v. McLean*, 255 Or 464, 479, 468 P2d 521 (1970); *State v. Goodin*, 8 Or App 15, 30-31, 492 P2d 287 (1971).

■ Defendant demurred to the indictment on the grounds that it charged more than one crime in violation of ORS 135.630(3). The trial court overruled the demurrer. Defendant's eighth assignment assigns as error the court's ruling.

The indictment was a multiple count indictment authorized by ORS 132.560(2) and alleged that the two crimes were committed as part of the same transaction. *State v. Huennekens*, 245 Or 150, 420 P2d 384 (1966). There was no error.

■ The last assignment of error concerns the denial of defendant's motion for judgment of acquittal on both counts. Our discussion of the other assignments reflects our conclusion that there was sufficient evidence to submit the case to the jury.

Affirmed.