624 P.2d 1274
**STATE of Arizona, Appellee,**

v.

**Jamie Ledezma MENA, Appellant.**

**No. 5026–PR.**

Supreme Court of Arizona,
In Banc.

Feb. 3, 1981.
Rehearing Denied March 17, 1981.

Roy A. Mendoza, Pinal County Atty., William J. Pearlman, Deputy County Atty., Florence, for appellee.

Jeffrey Blackman, Oracle, for appellant.

GORDON, Justice:

Defendant Jamie Mena was convicted by a jury of aggravated assault, escape and disorderly conduct following an incident during which Stephen Koors was attacked by three assailants and stabbed with a steak knife outside a bar in Pinal County, Arizona. Defendant sought reversal of his convictions for aggravated assault and escape in the Court of Appeals on three grounds: (1) admission of testimony from the victim without proper foundation regarding his pretrial hypnosis, (2) insufficient evidence of arrest to support a conviction of escape, and (3) denial of effective assistance of counsel.

The Court of Appeals affirmed defendant's convictions. We accepted his petition for review, taking jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 31.19, 17 A.R.S. Rules of ·Criminal Procedure. While we approve the reasoning and result of the Court of Appeals as to defendant's second and third grounds of appeal, we reverse the conviction of assault based on defendant's first ground of appeal in light of our prior holding in *State v. La Mountain*, 125 Ariz. 547, 611 P.2d 551 (1980), and remand for a new trial. So much of the opinion of the Court of Appeals, 128 Ariz. 244, 624 P.2d 1292 (App.1980), which refers to hypnotically adduced testimony is vacated.

The record reveals that sometime after the assault out of which these convictions arose, the victim, Koors, went to Tucson with a Casa Grande police officer to see two doctors who hypnotized him in an attempt to increase his recollection as to the details of the assault. The doctors questioned Koors about the incident while he was under hypnosis and told him that he would remember what he had related to them during the hypnotic session after he came out of hypnosis.

At trial, an objection was raised to admitting Koors' testimony regarding the events of the assault in the absence of "foundational evidence that what he remember[ed] he remember[ed] because of his true recollection [and not] because it might have been implanted in his mind by the hypnotist." Defense counsel argued that Koors should not be allowed to testify "without testimony from the hypnotist that he does remember this independently of any suggestion from the hypnotist." The trial court denied this motion "on the basis that it·was untimely brought" under Rule 16.1(b), 17 A.R.S. Rules of Criminal Procedure.

On appeal, the Court of Appeals correctly noted that *La Mountain, supra*, stands for the proposition that "[t]estimony developed as a result of hypnosis is inadmissible." Agreeing with the trial court that defendant's motion was precluded as untimely brought, however, the Court of Appeals concluded that admitting the victim's testimony was not fundamental error and affirmed the trial court judgment. This conclusion was based in part on the Court of Appeal's finding that "there is respectible authority for the proposition that hypnotically adduced evidence is admissible, the fact of hypnosis affecting its credibility but not its admissibility."

■ Motions not raised within the time limits of Rule 16.1(b), 17 A.R.S. Rules of Criminal Procedure, are precluded by Rule 16.1(c), 17 A.R.S. Rules of Criminal Procedure, "unless the basis therefore was not then known, and by the exercise of reasonable diligence could not then have been known, and the party raises it promptly upon learning of it." Had *La Mountain, supra*, been decided prior to defendant's trial, his motion to exclude Koors' testimony would have been untimely. Defendant's motion was based not on *La Mountain*, however, but on the absence of the hypnotist whom defendant believed to be necessary to supply the foundation for Koors' hypnotically refreshed testimony. The state's decision not to call the hypnotist was disclosed to defendant only one day before trial. Because we feel defense counsel was not required to anticipate the state's failure to supply adequate foundation for the introduction of evidence, we believe the trial court's ruling on the ground the defense motion was untimely made is in error.

It is unnecessary, therefore, for us to determine whether admission of Koors' testimony was fundamental error. We need only consider whether testimony possibly tainted by hypnosis should have been excluded upon timely objection.

It is generally agreed that hypnosis is a state of altered consciousness and heightened suggestibility in which the subject is prone to experience distortions of reality, false memories, fantasies and confabulation (the "filling in of memory gaps with false memories or inaccurate bits of information"). Dilloff, The Admissibility of Hypnotically Influenced Testimony, 4 Ohio N.U. L.Rev. 1, 5 (1977). *See* 9 Encyclopedia Britannica 133 (1974); Diamond, Inherent Problems in the Use of Pretrial Hypnosis on

a Prospective Witness, 68 Calif.L.Rev. 313 (1980); Dilloff, *supra*; Spector & Foster, Admissibility of Hypnotic Statements: Is the Law of Evidence Susceptible? 38 Ohio St.L.J. 567 (1977); 8 Utah L.Rev. 78 (1962-64). In the context of pretrial interrogation under hypnosis, these distortions, delusions and confabulations are apparently aggravated by the tendency of a subject to respond in a way he believes is desirable to the hypnotist. This may happen even without any intent or awareness on the part of the hypnotist or the subject. For example, Spector & Foster, *supra*, state, at page 578:

> "The hypnotized subject may respond to implicit stimuli unintentionally emanating from the hypnotist, and unrecognized by him. The desire to please the hypnotist may induce the subject to mirror the attitude detected in the hypnotist's questions and in his behavior.[58]

> \*    \*    \*    \*    \*    \*

"[58] For example, a subject might confess to a crime if the hypnotist's questions unintentionally implied guilt."

In addition, a person may assimilate the distortions, delusions and confabulations he develops under hypnosis as part of his own memory. After the hypnotic session has ended, the subject would then perceive those hypnotically induced impressions to be reflections of his actual past observations. 9 Encyclopedia Britannica, *supra*. "[T]he subject may actually believe he is remembering \* \* \* on his own, when in reality the 'memory' was implanted by the hypnotist." Dilloff, *supra*, at 4.

A recent law review article by an author who is both a professor of law at the University of California at Berkeley and a clinical professor of psychiatry at the University of California at San Francisco contains the following opinion:

> "I believe that once a potential witness has been hypnotized for the purpose of enhancing memory his recollections have been so contaminated that he is rendered effectively incompetent to testify. Hypnotized persons, being extremely suggestible, graft onto their memories fantasies or suggestions deliberately or unwittingly communicated by the hypnotist. After

hypnosis the subject cannot differentiate between a true recollection and a fantasy or a suggested detail. Neither can any expert or the trier of fact. This risk is so great, in my view, that the use of hypnosis by police on a potential witness is tantamount to the destruction or fabrication of evidence." Diamond, *supra*, at 314.

Few reported cases have addressed the issue of the admissibility of testimony offered by witnesses who have undergone hypnosis in an attempt to increase their memories concerning events about which they may testify. As the Court of Appeals correctly noted, most courts which have considered the question have concluded that prior hypnosis neither renders a witness incompetent nor renders a witness' testimony inadmissible. *See United States v. Awkard*, 597 F.2d 667 (9th Cir.) *cert. denied*, 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979); *United States v. Adams*, 581 F.2d 193 (9th Cir.) *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *Kline v. Ford Motor Co., Inc.*, 523 F.2d 1067 (9th Cir. 1975); *Wyller v. Fairchild Hiller Corp.*, 503 F.2d 506 (9th Cir. 1974); *Creamer v. State*, 232 Ga. 136, 205 S.E.2d 240 (1974); *People v. Smrekar*, 68 Ill.App.3d 379, 24 Ill.Dec. 707, 385 N.E.2d 848 (1979); *Harding v. State*, 5 Md.App. 230, 246 A.2d 302 (1968), *cert. denied*, 395 U.S. 949, 89 S.Ct. 2030, 23 L.Ed.2d 468 (1969). *State v. McQueen*, 295 N.C. 96, 244 S.E.2d 414 (1978); *State v. Brom*, 8 Or.App. 598, 494 P.2d 434 (1972); *State v. Jorgensen*, 8 Or.App. 1, 492 P.2d 312 (1971).

The first of this series of cases which hold testimony of a previously hypnotized witness to be admissible, *Harding, supra*, handled the admissibility question cursorily, relying solely on the witness' declaration that she was testifying from her own recollection:

> "The admissibility of Mildred['s] \* \* \* testimony concerning the assault \* \* \* causes no difficulty. On the witness stand she recited the facts and stated that she was doing so from her own recollection. The fact that she had told dif-

ferent stories or had achieved her present knowledge after being hypnotized concerns the question of the weight of the evidence which the trier of facts, in this case the jury, must decide." 5 Md. App. at 236, 246 A.2d at 306.

The court then considered the sufficiency of the hypnotized witness' testimony to support the verdict.

None of the early cases following *Harding* which approved the admission of testimony from previously hypnotized witnesses contain any analysis of the effects of hypnosis or even acknowledge its power to distort memory. Most of those cases instead follow *Harding's* lead, citing it as authority for admission of such testimony, and rely generally on (1) the witnesses' statements that they were testifying from their own recollections, *see Kline, supra; Wyller, supra,* and (2) the assumption that cross-examination would enable a jury to make an adequate determination as to the credibility of the testimony, *see Wyller, supra; Creamer, supra; Brom, supra; Jorgensen, supra.*

Accepting a witness' statement that he is testifying from his own recollection requires the assumption that the witness is capable of making a determination that what he perceives as his recollection actually came from his prior observations as opposed to impressions planted in his memory through hypnosis. Such an assumption is contrary to the opinion held by many authorities that a witness will recall memories fabricated under hypnosis as his own recollection and will be unable to distinguish his true memories from pseudomemories implanted during hypnosis. *See* 9 Encyclopedia Britannica, *supra*; Diamond, *supra; Dilloff, supra.*

The faith which the above courts placed in the power of cross-examination also seems misplaced. One article claims that "[t]he subsequent opportunity for cross-examination at the trial is virtually ineffective as a means of assuring that no false suggestions have been implanted." Spector & Foster, *supra,* at 593. This is because not only, as stated above, can a witness sincerely believe that "memories" developed and assimilated under hypnosis are his own, but he will often be more convinced of the accuracy of such hypnotically induced memories than those recalled due to the witness' actual observations. *See* Diamond, *supra.* "[C]ooperative hypnotized subjects remember distorted versions of actual events and are themselves deceived. When recalled in hypnosis, such false memories are accompanied by strong subjective conviction and outward signs of conviction that are most compelling to almost any observer." 9 Encyclopedia Britannica, *supra,* at 139.

In later cases approving the admission of testimony from previously hypnotized witnesses, courts have shown more concern about such testimony. The Ninth Circuit warned in *Adams, supra,* "that investigatory use of hypnosis on persons who may later be called upon to testify in court carries a dangerous potential for abuse. Great care must be exercised to insure that statements after hypnosis are the product of the subject's own recollections, rather than of recall tainted by suggestions received while under hypnosis." 581 F.2d at 198–99. The *Adams* court pointed out that defendant did not object to the adequacy of the foundation laid for the receipt of the testimony, but rather objected based on an argument which the court had recently rejected. In a footnote, the court set out standards which it felt should be followed when potential witnesses were hypnotized for the purpose of refreshing their recollection:

> "12. We think that, at a minimum, complete stenographic records of interviews of hypnotized persons who later testify should be maintained. Only if the judge, jury, and the opponent know who was present, questions that were asked, and the witness's responses can the matter be dealt with effectively. An audio or video recording of the interview would be helpful." *Id.* at 199.

The appellate Court of Illinois noted in *Smrekar, supra,* that although certain medical authorities indicate that hypnosis can be used to restore memory, the hypnotized subject is susceptible to fantasy and suggestion. In ruling the hypnotically tainted tes-

timony to be admissible, the Illinois court moved away from uncritical reliance on the witness' declaration that her testimony came from her own recollection and on cross-examination to consideration of other factors: (1) competence of the hypnotist, (2) absence of hypnotic suggestion, (3) substantial corroborating evidence, and (4) ample opportunity of the witness to observe.

One judge on the panel of three dissented, indicating that the majority opinion was a prime example of the truth of the old adage, "[h]ard cases make bad law." 68 Ill.App.3d at 393, 24 Ill.Dec. at 718, 385 N.E.2d at 859. The dissent implied that the admissibility holding had been reached to avoid "serious questions as to competency of counsel." *Id.* at 394, 24 Ill.Dec. at 718, 385 N.E.2d at 859. It pointed out that the court found the witness' testimony to be admissible with no foundation in the record, with no showing as to the scientific basis for hypnosis, with no recording of the hypnotic sessions and with nothing to establish that the testimony "retrieved" through hypnosis was substantially probative and an aid in the truth-seeking process. The dissenting judge concluded that while he was "not persuaded that the truth-seeking process is necessarily helped by the use of hypnosis," he felt it incumbent on the offeror of "testimony retrieved, enhanced, or obtained by hypnosis to establish what the procedure is, what its limitations are, and what such tinkering amounts to." *Id.* at 395, 24 Ill. Dec. 718, 385 N.E.2d at 859. Absent such a showing, this judge would have found hypnotically tainted evidence inadmissible.

In addition to the above cases, one federal district court judge granted writs of habeas corpus to two Georgia prisoners because the state had suppressed audiotapes and transcripts of hypnotic sessions during which the prosecution's key witness had had her memory "reconstructed." *Emmett v. Ricketts*, 397 F.Supp. 1025 (1975). Although the case turned on *Brady* questions, the court observed in a footnote that in the event of retrial, "serious issues remain with respect to Deborah Kidd's competency to testify." *Id.* at 1048 n. 39.

The only reversal of a jury conviction based on a finding that admission of "hypnotically refreshed testimony" was erroneous which our research has uncovered is a recent Michigan Court of Appeals case, *People v. Tait*, 99 Mich.App. 19, 297 N.W.2d 853 (1980). That court held that hypnosis had not achieved the degree of "general scientific acceptance" required to permit its introduction. Hypnosis of the key witness was compared to " 'tamper[ing] with evidence material to a defendant's guilt or innocence.' " *Id.* at ——, 297 N.W.2d at 857. The Court ordered that on retrial, the prosecution would be "absolutely prohibited from in any way using any testimony of deputy sheriff Myers," the hypnotized witness. *Id.* at ——, 297 N.W.2d at 857.

We have said that a scientific principle must have gained general acceptance in the particular field in which it belongs in order to be accepted by a court as fact. *Scales v. City Court of City of Mesa*, 122 Ariz. 231, 594 P.2d 97 (1979); *see People v. Kelly*, 17 Cal.3d 24, 130 Cal.Rptr. 144, 549 P.2d 1240 (1976). We believe that the same standard should apply to the use of hypnosis to produce testimony by purportedly improving memory.

While the medical use of hypnosis for certain therapeutic purposes has been approved by the American Medical Association, 168 J.A.M.A. 186–87 (Sept. 13, 1958), the use of hypnosis to aid in accurate memory recall is not yet generally accepted. "It remains controversial whether hypnotic suggestions can improve memory effectively." 9 Encyclopedia Britannica, 133, 137 (1979).

The determination of the guilt or innocence of an accused should not depend on the unknown consequences of a procedure concededly used for the purpose of changing in some way a witness' memory. Therefore, until hypnosis gains general acceptance in the fields of medicine and psychiatry as a method by which memories are accurately improved without undue danger of distortion, delusion or fantasy, we feel that testimony of witnesses which has been tainted by hypnosis should be excluded in criminal cases.

For the present, then, we reaffirm our holding in *La Mountain* regarding exclusion of hypnotically induced testimony:

"Although we perceive that hypnosis is a useful tool in the investigative stage, we do not feel the state of the science (or art) has been shown to be such as to admit testimony which may have been developed as a result of hypnosis. A witness who has been under hypnosis, as in the case here, should not be allowed to testify when there is a question that the testimony may have been produced by that hypnosis." *La Mountain, supra,* 125 Ariz. 551, 611 P.2d at 555.

We realize that it will often be difficult to determine whether proffered testimony has been produced by hypnosis or has come from the witness' own memory, unaffected by hypnotic suggestion. In order to ensure against the dangers of hypnosis, therefore, this Court will consider testimony from witnesses who have been questioned under hypnosis regarding the subject of their offered testimony to be inadmissible in criminal trials from the time of the hypnotic session forward.[1]

The state argues that exclusion due to hypnotic taint of testimony from eyewitnesses would violate A.R.S. § 13–3989:

"The testimony of a witness that he saw the accused commit or participate in the commission of the crime for which the accused is being tried shall be admissible in evidence in a criminal prosecution in any trial court of this state."

■ While this statute establishes in general the admissibility of eyewitness testimony, it is subject to exceptions. Eyewitness identification of an accused becomes inadmissible at trial when tainted by an illegal pre-trial identification procedure. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied,* 397 U.S. 965, 90 S.Ct. 1000, 25

L.Ed.2d 257 (1970). This exclusionary rule was adopted by the federal Supreme Court in *Wade, supra,* partially "to preserve defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him" 388 U.S. at 227, 87 S.Ct. at 1932, 18 L.Ed.2d at 1157. We feel that exclusion of hypnotically induced testimony would further the same purpose.

■ As mentioned above, there is a strong belief among several authorities that hypnotism of a witness renders subsequent cross-examination ineffective. Cross-examination is a right so essential to protection of criminal defendants that it has been held to be a vital part of the federal constitutional right of confrontation. *Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *State v. Fleming,* 117 Ariz. 122, 571 P.2d 268 (1977). Until the general scientific reliability of hypnotism as an effective and accurate memory enhancer has been established and/or the barriers which it raises to effective cross-examination are somehow overcome, we think the confrontation clause of the Sixth Amendment of the United States Constitution requires an exception to A.R.S. § 13–3989 for hypnotically tainted testimony.

■ Accordingly, we believe that the trial judge erred in admitting the testimony of the victim, Stephen Koors, after he had been interrogated under hypnosis regarding the events surrounding the assault incident before us. A review of the record persuades us that had the victim's testimony been excluded at trial, a reasonable probability exists that the jury would have reached a different verdict as to the charge of aggravated assault but not the charge of escape. See *State v. Ybarra,* 97 Ariz. 200, 398 P.2d 905 (1965). We therefore reverse defendant's conviction of aggravated assault and remand for a new trial on that charge. Defendant's conviction of escape is

---

1. We note that our decision today may place the state in the difficult position of choosing whether to use a particular witness' testimony at a criminal trial or to subject that witness to hypnotism as an investigatory tool. We do not pass at this time on the state's ability to preserve a witness' prehypnotic testimony by using a Rule 15.3 deposition, 17 A.R.S., Rules of Criminal Procedure.

affirmed. Opinion of the Court of Appeals approved in part and vacated in part.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON, J., concur.

HAYS, Justice (specially concurring):

I concur in the result.