655 P.2d 794

**Joe STARR and Miriam Starr, husband and wife, Plaintiffs/Appellants,**

v.

**Roy K. CAMPOS, Defendant/Appellee.**

**No. 2 CA–CIV 4179.**

Court of Appeals of Arizona, Division 2.

June 14, 1982.

Rehearing Denied Sept. 9, 1982.

Review Denied Oct. 13, 1982.

Miller & Pitt, P.C. by Nanette M. Warner, Tucson, for plaintiffs/appellants.

Slutes, Browning, Sakrison & Grant, P.C. by Tom Slutes, Tucson, for defendant/appellee.

OPINION

BIRDSALL, Judge.

This appeal is from a judgment in favor of the defendant-appellee in an action for wrongful death arising out of a collision between a truck and a small car. The appellants contend that the trial court erred in refusing to instruct the jury that wanton and wilful negligence on the part of the defendant would preclude reliance upon a defense of contributory negligence. They also claim error in the court's refusal to instruct on punitive damages and in the admission of certain expert testimony based upon a computerized analysis of the accident. Because we agree with the first of the appellants' claims, we reverse.

■ In assessing the necessity of jury instructions we must view the evidence in the light most favorable to the instruction's proponent. e.g., *Schneider v. Macari,* 111 Ariz. 483, 533 P.2d 540 (1975). If there is evidence tending to establish the underlying theory of the instruction, the instruction must be given and any conflict between that and other evidence must be resolved by the jury. *Nichols v. Baker,* 101 Ariz. 151, 416 P.2d 584 (1966); *Correa v. Curbey,* 124 Ariz. 480, 605 P.2d 458 (App.1979).

The appellants' son, Stephen Starr, was killed when the Volkswagen he was driving collided with a 12,000 pound truck, driven by the appellee, which turned left across the Volkswagen's northbound path. The collision occurred at about midnight, May 5, 1979, at the intersection of South Houghton Road and East Irvington Road on Tucson's far southeast side. The roadway there is straight for miles, but ascends slightly to the south (the direction from which the Volkswagen was traveling) to a hillcrest about 900 feet south of the intersection. The Volkswagen was traveling with its headlights on at a speed in excess of the legal limit.[1] The appellee started his left turn onto a dirt "extension" of Irvington Road about 100 feet north of the intersection. Despite the nearly 1000 feet of unobstructed roadway, the appellee did not see the approaching Volkswagen until it was about 50 feet (one second) away, too late to avoid the collision. Stephen Starr and his passenger were pronounced dead at the scene.

The appellee was given a breathalyzer test after the accident. The parties stipulated that the result of that test, showing the appellee's blood to contain 0.12% alcohol, was correct. In addition, there was evidence that the appellee is blind in his right eye and therefore lacks both peripheral vision on that side and normal depth perception. The deposition of an opthomologist, read to the jury at the beginning of the trial, indicated that alcohol would further suppress the appellee's vision and that it was generally unwise for a person with only one eye to drive at night.

1. The appellants produced evidence tending to show that the decedent was driving at the speed limit, but in looking for evidence to support the requested instruction we must not ignore that which raised contributory negligence as an issue.

One whose gross or wanton negligence proximately causes injury to another may not assert the other's contributory negligence as a defense. e.g., *Evans v. Pickett,* 102 Ariz. 393, 430 P.2d 413 (1967); *Bryan v. Southern Pacific Co.,* 79 Ariz. 253, 286 P.2d 761, 50 A.L.R.2d 1 (1955); Restatement of Torts 2d § 482(1). The evidence set forth above raised the issue of the appellee's gross or wanton negligence for jury determination.

On these facts, the controlling case is *Smith v. Chapman,* 115 Ariz. 211, 564 P.2d 900 (1977). There our supreme court held that evidence that the defendant was driving while intoxicated, and that his intoxication was a proximate cause of the plaintiff's injuries, was sufficient to require an instruction that contributory negligence is not a defense to gross or wanton negligence. The evidence in this case, although different in some respects is legally indistinguishable from the evidence in *Chapman.*

Here it was stipulated that the appellee's blood contained a 0.12% alcohol, well in excess of the amount necessary to raise a presumption that he was intoxicated. A.R.S. § 28–692(B). The appellee points out that there was other evidence tending to show that he was not intoxicated. Unlike common "bursting bubble" presumptions, however, statutory presumptions do not vanish in the face of contradictory evidence. *Flores v. Tucson Gas, Electric Light & Power Co.,* 54 Ariz. 460, 97 P.2d 206 (1939); *State v. Daniels,* 106 Ariz. 497, 478 P.2d 522 (1970); *Udall on Evidence* § 193 (1960). This is particularly true when the presumption has been raised, as in this case, by evidence that is itself of such strong probative value that it may establish the presumed fact beyond a reasonable doubt even when contradictory evidence is introduced.

In attempting to distinguish this case from *Chapman,* the appellee has directed attention to the supreme court's criticism of this court's earlier opinion in that case, where it was stated:

"... voluntary intoxication on the part of the operator of a motor vehicle involved in an accident proximately caused by his negligent operation of the vehicle constitutes a reckless disregard for the safety of others (wanton misconduct)...."

The supreme court's quarrel with that statement was not so broad as the appellee would have us believe. The court merely pointed out that this statement, taken literally and out of context, would require punitive damages (and preclude the assertion of contributory negligence) in any case where the defendant was driving while intoxicated, regardless of whether that particular negligence [2] was a proximate cause of the plaintiff's injury. That criticism has no effect upon this case, where there was ample evidence from which the jury could infer that the appellee's intoxicated driving was a proximate cause of Stephen Starr's death. While we agree that *Chapman* might prevent a court from directing a verdict in the plaintiff's favor on the question of wanton negligence, we cannot read that opinion, as the appellee urges, to contradict its own result. If there is evidence that the defendant was driving while intoxicated, and that his intoxicated driving was a proximate cause of an accident and resulting injury, the jury must decide whether that negligence was gross or wanton. Since the facts reveal that contributory negligence was the appellee's only plausible defense, the trial court's refusal to allow the jury to determine whether that defense was available amounts to reversible error. For these same reasons, we also find error in the refusal of a punitive damages instruction.

The appellants also contend that the trial court erred in admitting evidence derived from a computerized analysis of the accident. The analysis was conducted by an expert witness for the appellee, an engineer specializing in automobile accident recon-

---

**2.** Driving while intoxicated is negligence *per se. Anderson v. Morgan,* 73 Ariz. 344, 241 P.2d 786 (1952).

struction. After hearing testimony from this expert and from another who was critical of computer simulation of automobile accidents, the court overruled the appellants' objection to the evidence, stating:

"I will overrule the objection, and I will permit the witness to testify. However, I think in light of his testimony that it is, roughly stated, "widely used," and that he has had personal experience with it, and that he has made these conclusions based on his personal experience. I find that it is not, as a matter of law, unreasonable for him to have relied on the data, and so I find that it is reasonable for him to have relied on the data."

From this statement of its reasons for admitting evidence from the computer analysis it is not clear whether the court was determining the admissibility of the evidence under the appropriate standard. Scientific evidence may be admitted only if it is derived from principles and procedures that have achieved general acceptance in the scientific field to which they belong. *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013, 34 A.L.R. 145 (1923); *State v. Mena,* 128 Ariz. 226, 231, 624 P.2d 1274, 1279 (1981). Although this "general acceptance" or "*Frey*" standard has been severely criticized by evidence commentators, *See,* e.g., *McCormick's Handbook of the Law of Evidence* § 203 (2nd Ed. 1972); Richardson, *Scientific Evidence* § 2.5 (2nd Ed. 1974), the recent opinion of our supreme court in *Mena* leaves little doubt that this rule is law in Arizona. *See Also State ex rel Collins v. Superior Court,* 132 Ariz. 180, 644 P.2d 1266 (1982). Under this standard it is not sufficient that any one expert relies upon the technique in question or that the technique is "widely used," unless that widespread use is without significant objection from the relevant scientific community. The court may not resolve a scientific dispute between proponents and opponents of the technique, so the very existence of the dispute precludes admission of the testimony.

It is not required, however, that scientists be in *universal* agreement as to the validity of the technique. *State v. Olivas,* 77 Ariz. 118, 267 P.2d 893 (1954). Nor is it necessary that scientists agree that the results of the procedure will always be correct. If that were the standard, for example, the courts would certainly be unable to allow the testimony of psychiatrists. The scientists need only agree that the procedure has a sound scientific basis and is capable of producing a result that can be used, with awareness of any limitations, for scientific purposes. Courts must cautiously regard the opinions of scientists that a procedure is or is not "reliable enough to be used in court." Such a conclusion is likely to result from a lack of understanding of legal relevance and of the prerogatives of the fact finder.

Under other circumstances it would perhaps be necessary for this court to determine whether the use of computer simulation of automobile accidents has achieved general acceptance among scientists in relevant fields. Although this is a factual question, it is one susceptible of appellate resolution. *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1977); Cf. *State v. Mena, supra* (question of general acceptance of hypnosis to refresh memory determined on appeal). In this case, however, since a remand is already required by our disposition of the previous issue, we believe it best for this determination to be made initially in the forum best suited to the resolution of factual questions, the trial court.

If this evidence is offered in a second trial, therefore, the court is directed to apply the *Frye* standard and determine specifically, in the absence of the jury, whether the procedure used to obtain that evidence is generally accepted among scientists in relevant fields, including accident reconstruction and automotive engineering. In making this determination the court may take judicial notice of the ability of a properly programmed computer to perform mathematical computation and of the general acceptance of the underlying principle of the method, the law of conservation of

linear momentum.[3] It will only be necessary to determine whether those of sufficient training and experience to judge are in general agreement that the program properly applies that principle (and any others it may involve) to automobile collisions.

Reversed and remanded.

HOWARD, C.J., and HATHAWAY, J., concur.

---

**3.** Although the appellants have characterized this scientific law as a "theory ... of questionable validity," it is actually a fundamental principle of Newtonian mechanics that has been, to say the least, generally accepted by scientists for more than two centuries. *See, e.g.,* 11 Encyclopedia Britannica Classical Mechanics, pp. 772–776 (1974). Its acceptance is "capable of accurate and ready determination by resort to [*numerous*] sources whose accuracy cannot reasonably be questioned," Rule 201(b)(2) Ariz. R.Evid., 17A A.R.S.