Argued and submitted May 14, 1982, resubmitted in banc February 9,
affirmed April 13, reconsideration denied June 10, petition for review denied
September 7, 1983 (295 Or 618)

# STATE OF OREGON,
*Appellant,*

*v.*

# MINDI MARIE TUCKER,
*Respondent.*

## (20-567a (81-5453a); CA A22122)

662 P2d 345

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Wayne Mackeson, Certified Law Student, Portland, argued the cause for respondent. On the brief was Des Connall, P.C., Portland.

BUTTLER, J.

## BUTTLER, J.

The state appeals from a pretrial order granting defendant's motion to suppress all evidence obtained by the state through the interception of all telephone calls to and from defendant's telephone during a period of about six weeks. The trial court found that the state had made no effort to minimize the interception of communications not otherwise subject to interception, ORS 133.724(4) and (5);[1] its order suppressed the tape recordings of all 958 telephone calls intercepted. We affirm.

---

[1] ORS 133.724 provides:

"(1) An ex parte order for the interception of wire or oral communications may be issued by any circuit judge upon written application made upon oath or affirmation of the individual who is the district attorney for the county in which the order is sought. The application shall include:

"(a) The name of the district attorney making the application and his authority to make the application;

"(b) The identity of the investigative or law enforcement officer making the application and the officer authorizing the application;

"(c) A statement demonstrating that there are reasonable grounds to believe that an individual is committing, has committed or is about to commit, a particular felony of murder, kidnapping, arson, robbery, bribery, extortion or other crime dangerous to life and punishable as a felony, or any conspiracy to commit any of the foregoing crimes;

"(d) A statement of the details, if known, of the particular crime alleged under paragraph (c) of this subsection;

"(e) A particular description of the nature and location of the facilities from which or the place where the wire or oral communication is to be intercepted, if known;

"(f) A particular description of the type of wire or oral communication sought to be intercepted;

"(g) The identity of the person, if known, suspected of committing the crime and whose wire or oral communications are to be intercepted;

"(h) A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or are likely to be too dangerous;

"(i) A statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of wire or oral communication has been first obtained, a description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

"(j) A statement as to whether any prior application has been made to intercept wire or oral communications from the same person and, if such prior application exists, a statement of the current status of that application; and

"(k) Where the application is for the extension of an existing order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

"(2) The judge may require the applicant to furnish further testimony or documentary evidence in support of the application.

"(3) Upon examination of such application and evidence the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the state if the judge determines on the basis of the facts submitted by the applicant that:

"(a) There is probable cause for belief that an individual is committing, has committed or is about to commit a particular crime described in paragraph (c) of subsection (1) of this section;

"(b) There is probable cause for belief that particular communications concerning that crime will be obtained through such interception;

"(c) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or are likely to be too dangerous; and

"(d) There is probable cause for belief that the facilities from which, or the place where, the wire or oral communications to be intercepted are being used, or are about to be used, in connection with the commission of that crime are leased to, listed in the name of, or commonly used by the individual suspected.

"(4) Each order authorizing or approving the interception of any wire or oral communication shall specify:

"(a) The identity of the person, if known, whose communications are to be intercepted;

"(b) The nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

"(c) A particular description of the type of communication sought to be intercepted, and a statement of the particular crime to which it relates;

"(d) The identity of the agency authorized to intercept the communications and of the person authorizing the application;

"(e) The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained; and

"(f) The name of the applicant, date of issuance, and the signature and title of the issuing judge.

"(5) No order entered pursuant to this section shall authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of authorization, nor in any event longer than 30 days. Extensions of any order may be granted, but only when application for an extension is made in accordance with paragraph (k) of subsection (1) of this section and the court makes the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purpose for which it is granted and in no event for longer than 30 days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to

Early in the morning of December 14, 1980, defendant's husband, Christopher Lee Tucker, was found dead at his home in Aloha by his two brothers, who had gone there to check on him at the request of their parents. He had been stabbed five times. Investigating officers interviewed defendant on December 14 and obtained the following information: (1) she had been estranged from her husband for a week and had moved into a friend's apartment; (2) she expressed concern over Christopher's well-being, and (3) Christopher had been threatened by two men in the defendant's presence a few days earlier.

After further investigation, suspicion focused on defendant and Craig Pottle; the police suspected that the two of them had planned the murder in order to collect and split insurance proceeds payable on Christopher's death. To delineate further the roles defendant and Pottle played in the murder, the district attorney, pursuant to ORS 133.724(1), applied to the circuit court for an *ex parte* order authorizing the interception of telephone calls to and from the telephone at the apartment of the friend with whom defendant was then living. The order was signed by the judge on December 17, and provided, in part, that the communications to be intercepted were limited to the telephonic communications of defendant "which are made or received on the above-described telephone, which pertain to the murder of Christopher Tucker and the intended distribution of $75,000 insurance proceeds she intends to collect." The order did not contain the statutorily required provision that the interception "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception, * * *." ORS 133.724(5).

The initial order expired after 15 days, but two later orders extended it through January 30, 1981. Although the order was limited to communications of the defendant,

minimize the interception of communications not otherwise subject to interception, and must terminate upon attainment of the authorized objective, or in any event in 30 days.

"(6) Whenever an order authorizing interception is entered pursuant to this section, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require."

the district attorney instructed the law enforcement officers to intercept *all* telephone conversations to and from that telephone, and all of them were monitored, logged and tape-recorded by the sheriff's deputies assigned to the operation. Those officers testified that they were instructed to monitor and record all conversations with the exception of conversations between defendant and legal counsel. They also testified to being able to identify defendant's voice within a few days after they commenced the monitoring. Of the 958 telephone conversations monitored, defendant participated in 461, and 260 of those were irrelevant to the matters covered by the order. The wiretap ended on January 16, 1981, when defendant and Pottle were arrested and taken into custody.

The trial court, in ordering suppression of all of the taped conversations, found that the state had substantially complied with all statutory requirements except one: minimization. The order authorizing the wiretap did not require minimization as mandated by ORS 133.724(5), but did limit what communications were authorized to be intercepted. The statutory minimization requirement is different from, and in addition to, the requirements that the order identify the person whose communications are to be intercepted and particularly describe the types of communication to be intercepted and the crime to which it relates. Minimization is a further limitation on the continued monitoring of communications of a person whose calls the order authorizes to be intercepted and requires that the interception cease if and when it is determined that the subject matter of a particular communication is irrelevant to the investigation. It may be that if there is minimization in fact, the absence of the required language in the order would not be fatal. Here, however, the trial court found, and the state does not deny, that the officers, at the direction of the district attorney, went well beyond the limitations that were contained in the order, intercepting and recording *all* telephone calls, including 192 calls to which defendant was not a party. The court also found that there had been no periodic judicial review or supervision of the interceptions. In fact, the judge authorizing the wiretap specifically declined that responsibility by deleting that portion of the proposed authorizing order. The trial court declined

to order only a partial suppression, because it found that there was no good faith, or any, effort to minimize or that there had, in fact, been any minimization.

The state contends that the trial court erred in suppressing *all* of the intercepted communications, because under the totality of circumstances the minimization requirements of the statute were met. It urges the use of an objective standard of reasonableness that would demonstrate compliance with the statute here. Second, the state argues that, even if the minimization requirement was not met, total suppression was not the proper remedy; rather, if suppression is appropriate, it should be limited strictly to what the trial court determines to be unauthorized or non-minimized interceptions.

*Scott v. United States,* 436 US 128, 98 S Ct 1717, 56 L Ed 2d 168 (1978), addressed the minimization issue under the federal statute on which the Oregon statute is based. The Court treated wiretapping as a search and seizure under the Fourth Amendment and held that there must be an objective assessment by the Court of the officers' actions in light of facts and circumstances then known to the officers in determining the validity of a search. Specifically as to wiretaps, the Court stated that the federal statute focuses on actions, not motives.

■ Applying the *Scott* standards to this case, several differences come to light. In *Scott,* the order authorizing the wiretap expressly required minimization, using the mandatory statutory language. In this case, that language is missing. In *Scott,* the trial judge authorizing the wiretap reviewed the situation on a regular basis throughout the period during which the wiretap was authorized. Here, the authorizing judge struck the language in the order calling for such judicial monitoring and review, and there was no judicial review of the operation. Further, there were only two suspects, Tucker and Pottle, whose identities were known to the police. *Scott* involved narcotics transactions of unknown scope and an uncertain and unspecified number of people; the investigation resulted in 22 arrests and 14 indictments. The investigation there involved numerous, different occurrences, which, as the investigation progressed, broadened its focus beyond the original

suspects. Here, nothing happened to change or extend the focus of the officers from the original two suspects.

The Supreme Court discussed several circumstances under which it would be reasonable for law enforcement officers not to attempt termination of intercepted calls. It listed short calls, one-time only calls and ambiguous calls. It pointed out the reasonableness of officers intercepting all calls in the early stages of surveillance, before any patterns emerged or before the officers could readily recognize voices. The Court then suggested that, once non-pertinent categories of calls were established, it would be unreasonable for officers to continue interception of those calls.

The wiretap in this case lasted from December 18, 1980, until January 16, 1981. The officers testified that they were familiar with the defendant's voice within a few days or, at the latest, by the end of the first week. Suspected co-conspirator Pottle's voice was easily identifiable by his Boston accent. Neither defendant nor Pottle used a code. The focus of the investigation continued to be on defendant and Pottle, and they were the only two arrested or charged with the murder.

Thus, it is difficult to justify, even under the totality of circumstances using an objective standard of reasonableness (as urged by the state), the officers' intercepting all telephone conversations to and from the telephone authorized to be tapped, ignoring the minimization requirements of the statute as well as the limitations imposed by the order. Unlike broad-based investigations in which there are numerous suspects, sophisticated codes and constant monitoring by the court, this case was focused and narrow and the interceptions were wholly unsupervised by the court. A broad search and seizure through a wiretap was unnecessary and an unchecked invasion of privacy.

The trial court's findings are supported by the record, and we find no reasonable basis for concluding that the minimization requirements under the statute or imposed by the authorizing order were met under the totality of the circumstances. Whether the remedy of total suppression of all intercepted calls is appropriate is another question. Because in *Scott* the Supreme Court concluded

that the minimization requirements had not been violated, it did not reach the issue of the scope of the suppression remedy in the event of a minimization violation. However, other courts have done so.

The Sixth Circuit Court of Appeals held in *United States v. George,* 465 F2d 772 (1972), that the motion to suppress all of the intercepted telephone conversations should have been granted by the trial court. In that case, the wiretap order was proper but was not given to the agent in charge of the interceptions. Neither were the officers designated to implement the wiretap provided with a copy of the court order; they were simply told that the wiretap was authorized and instructed to intercept the telephone conversations. The court stated:

"* * * But because of the failure to furnish a copy of the authorization order to the officers monitoring the calls the protective limitations of the order were completely defeated. If the agents of the Government are not required to comply with the limitations contained in an order authorizing interception of telephone calls then the purpose of such order would be defeated and the only limitation on such interceptions would be the discretion of the officers and the provisions of Title 18 U.S.C. § 2518(4) would be a nullity. Obviously this was not the intent of the Congress at the time the statute was enacted." 465 F2d at 775. (Footnote omitted.)

In the present case, the district attorney testified that, rather than give a copy of the wiretap court order to the police officers involved, he told them to tape all telephone calls to and from that telephone. Thus, as in *George,* the limiting language in the wiretap order was defeated. The Ninth Circuit Court of Appeals in *United States v. Turner,* 528 F2d 143 (1975), although finding that the minimization requirement had been met in that case, stated:

"In a case where it is clear that the minimization provision of the order was disregarded by the government throughout the period covered by the order, a total suppression might well be appropriate. We assume, *arguendo,* that such should be the rule." 528 F2d at 156. (Emphasis in original.)

■ Minimization as required by the statute must be employed by the law enforcement officers *during* the

wiretap, not by the court *after* the wiretap. *United States v. Focarile,* 340 F Supp 1033, 1046-47 (DC Md 1972). Although partial suppression may act as a sufficient prophylactic measure in the context of seizures of physical objects, the seizure of conversation differs so significantly as to warrant a stronger safeguard. Knowing that only "innocent" or irrelevant calls would be suppressed, the government could intercept every conversation during the entire period of the wiretap with nothing to lose by doing so, because it would offer at trial only those conversations with incriminating value, thereby completely avoiding the statutory minimization mandate. A conversation once seized can never truly be given back like a physical object. Although the evidence in *Focarile* established clearly that the officers had minimized the telephone interceptions, the court stated that "a failure by the government to comply with the § 2518(5) minimization requirement would require total suppression of all of the communications intercepted." 340 F Supp at 1047.

In *United States v. Lanza,* 349 F Supp 929 (MD Fla 1972), the court held that when the minimization mandate is blatantly ignored, the proper remedy is the suppression of the entire intercept. It went on to say:

> "On the other hand, where non-pertinent calls are intercepted despite the agent's effort at minimization, only the unauthorized interceptions should be suppressed." 349 F Supp at 932. (Citations omitted.)

*See also United States v. LaGorga,* 336 F Supp 190 (WD Pa 1971); *United States v. King,* 335 F Supp 523 (SD Cal 1971).

It is clear that this case involves blatant disregard by the district attorney and law enforcement officers of the minimization requirements of the statute and of the order. The only explanation for the wholesale interception of telephone calls is that the district attorney was not aware of the statutory minimization requirements, which is not only no excuse, it is not even an explanation for exceeding the scope of the order. This case is not one where a good faith effort was made to minimize as in *United States v. Leta,* 332 F Supp 1357 (DC 1971), and *United States v. Armocida,* 515 F2d 29 (3d Cir 1975). Neither is it a case, as

in *Scott,* where minimization did, in fact, occur because of the vastness of the criminal conduct being investigated and the constant judicial oversight of what was being done. The officers in this case demonstrated no regard for the right of privacy; neither did they do anything, much less all they reasonably could, to avoid unnecessary intrusion. *See United States v. Feldman,* 606 F2d 678 (6th Cir 1979); *United States v. Clerkley,* 556 F2d 709 (4th Cir 1977); *United States v. Tortorello,* 480 F2d 764 (2d Cir 1973).

Aside from the fact that the federal courts have recognized total suppression as an appropriate remedy under the circumstances presented here, ORS 133.735[2] expressly authorizes that remedy when the order authorizing the wiretap is insufficient on its face, or the interception was not made in conformity with the authorizing order. Both of those grounds exist here. Further, there is an additional reason for that remedy in Oregon. ORS 165.540 prohibits wiretapping, "except as otherwise provided in ORS 133.724 * * *," and prohibits the use or attempted use of any conversation obtained by means prohibited by that section. In order to be available for use, the wiretaps must

---

[2] ORS 133.735 provides:

"(1) Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the state, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted under ORS 133.724, or evidence derived therefrom, on the grounds that:

"(a) The communication was unlawfully intercepted;

"(b) The order of authorization or approval under which it was intercepted is insufficient on its face; or

"(c) The interception was not made in conformity with the order of authorization or approval.

"(2) Such motion shall be made -before the trial, hearing or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been unlawfully obtained. The judge, upon the filing of such motion by the aggrieved person, may in the judge's discretion make available to the aggrieved person or the person's counsel for inspection such portions of the intercepted communications or evidence derived therefrom as the judge determines to be in the interests of justice.

"(3) In addition to any other right to appeal, the state shall have the right to appeal from an order granting a motion to suppress under subsection (1) of this section."

have been performed in accordance with ORS 133.724, the statute here involved. After a conclusion that the wiretaps were obtained in violation of the statutory authorization, due regard for the legislative mandate requires that the results not be used. Therefore, total suppression is the appropriate remedy in this case.

■ ■    The state also contends that, if minimization did not in fact occur, defendant has standing to challenge only tapes of those telephone conversations to which she was a party.[3] The general rule is that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. *Alderman v. United States,* 394 US 196, 89 S Ct 961, 22 L Ed 2d 176 (1969). Defendant moved into her friend's apartment a week before the murder and was living there during the entire time of the wiretap. Although the telephone was not listed under her name, she used it as her telephone as much as, if not more than, her roommate. Indeed, that telephone was authorized to be tapped specifically because it was in her place of residence. Therefore we hold that defendant has standing to challenge all intercepted calls.

Affirmed.

---

[3] In the related case of *State v. Pottle,* 62 Or App 545, 662 P2d 351 (1983), we held that Pottle had standing to object to the admissibility of 15 intercepted calls to which he was a party, even though it was not his telephone that was monitored.