Argued and submitted October 13, 1982, resubmitted in banc January 10, reversed and remanded April 13, reconsiderations denied June 10, petitions for review allowed September 7, 1983 (295 Or 617)
See 296 Or 274, 677 P2d 1 (1984)

# STATE OF OREGON,
*Respondent,*

*v.*

# CRAIG STEVEN POTTLE,
*Appellant.*

(20-567B; CA A22439)

662 P2d 351

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

GILLETTE, J.

### GILLETTE, J.

Defendant appeals his conviction for murder, assigning as error five trial court rulings on the admissibility of certain types of evidence, some of which was obtained by electronic surveillance. We reverse and remand for a new trial.

In early December, 1980, Mindi Tucker left her husband, Chris, and moved in with Paula Mannhalter. About a week later, on December 14, Chris Tucker's body was discovered in the bedroom of his Washington County home. He had been stabbed five times. After several days of investigation, suspicion centered on Mindi and on defendant as a possible accomplice: the police suspected that defendant and Mindi had planned Chris' death so that they could split the proceeds of his life insurance policy. When the police attempted to interview Mindi after the murder, they found her evasive about defendant's identity, his whereabouts and the nature of her relationship with him. In order to "separate and define the roles" played by defendant and Mindi in Chris' murder, the Washington County Sheriff's Office, with the assistance of the Washington County District Attorney's office, obtained a court order authorizing a wiretap on the telephone in Paula Mannhalter's apartment. The wiretap was to last for 15 days, and interception was to be limited to Mindi's calls made or received on that telephone, pertaining to Chris' murder and distribution of the proceeds of his insurance policy. The court order authorizing the wiretap issued on December 17, and the wiretap was installed the following day. Despite the limiting language in the order, the officers who executed it were instructed by the district attorney to monitor and tape all incoming and outgoing telephone calls, except those between the apartment's occupants and their lawyers. The district attorney's office obtained two extensions of the wiretap order; the second was to expire on January 30, 1981, but the wiretap terminated on January 16, when the police arrested both defendant and Mindi. In all, 958 telephone calls were monitored and recorded while the wiretap was in operation.

By pretrial motions, defendant sought, *inter alia,* an order prohibiting the state from introducing "any

statements made by any alleged co-conspirator of the defendant" and an order to suppress all evidence obtained by the state through the wiretap. After two omnibus hearings, the trial court ruled that (1) certain of Mindi's statements were admissible as declarations of a co-conspirator and (2) defendant was not entitled to suppression of the tapes of 15 telephone calls that the state intended to introduce, and did introduce, in evidence at his trial.[1] Defendant was tried by jury and convicted. This appeal followed.

Defendant assigns as error the trial court's ruling denying his motion to suppress evidence obtained through a wiretap. The motion questioned the constitutionality of Oregon's wiretap statute and alleged numerous defects in the state's application for a wiretap order, the order itself and the sheriff's office's execution of the order. We need address only defendant's contention that the evidence should be suppressed because the investigating officers failed to "minimize" the interception, as the statute, ORS 133.724(5), requires.[2]

■ ■ This issue is controlled by *State v. Tucker,* 62 Or App 512, 662 P2d 345 (1983), holding that interception of communications, where minimization would be possible but there is no attempt at minimization, is impermissible under ORS 133.724(5) and requires suppression of all the interceptions. The only distinction between the present case and *Tucker* lies in the number of intercepted communications at issue: 15 of defendant's; 461 of Tucker's (including the 15 with defendant). Nonetheless, the interceptions—without any attempt to minimize—were equally improper as to both parties. Defendant has standing to seek suppression. *See* ORS 133.721; 133.735. The

---

[1] Prior to trial, defendant and Mindi raised identical objections to the wiretap evidence. An omnibus hearing was held in Mindi's case and completely incorporated by reference into defendant's case. The trial court suppressed all wiretap evidence in Mindi's case. The state appealed. *See State v. Tucker,* 62 Or App 512, 662 P2d 345 (1983), discussed *post.*

[2] ORS 133.724(5) requires that

"[e]very order and extension thereof shall contain a provision that the authorization to intercept shall be * * * conducted in such a way as to minimize the interception of communications not otherwise subject to interception * * *."

trial court should have granted his motion to suppress the 15 intercepted communications.[3]

Because this case must be retried, one other alleged error requires discussion. Defendant assigns as error the trial court's ruling that evidence of certain statements made by Mindi was admissible under former ORS 41.900[4] (*repealed* by Or Laws 1981, ch 892, § 98) as evidence of the declarations of a co-conspirator. He argues first that the state failed to satisfy the threshold requirement for admission, *i.e.,* that the prosecution make a *prima facie* showing of conspiracy. We disagree.

At the omnibus hearing, the state introduced evidence of the following facts: As of December 8, Mindi and defendant were seeing each other socially; defendant threatened that night to hurt or kill Chris if he continued to bother Mindi; Mindi told defendant that "the only good thing about [Chris Tucker] is he has a good-sized life insurance policy and I am the beneficiary"; defendant replied that he would make himself and Mindi rich for half the insurance proceeds; Mindi said that she would "think about it"; Mindi and defendant then conversed privately in her bedroom for aproximately five minutes; after the conference, defendant asked their companion, Jim Bennett, what he thought of the insurance scheme; Bennett said he thought that it was insane; defendant asked Mindi if she knew where Chris lived and she replied that she did and that she still had a key to his house; when defendant and Bennett later left Mindi's apartment, defendant again told Bennett that he would "do it * * * for half the insurance

---

[3] Our disposition of the interception of communications assignment on minimization grounds means we are not required to consider defendant's alternative theory based upon the failure to have the tapes immediately *sealed. See* ORS 133.729.

[4] At the time of defendant's trial, ORS 41.900 provided, in part, that:

"Evidence may be given of the following facts:

"* * * * *

"(6) After proof of a conspiracy, the declaration or act of a conspirator against his co-conspirator, and relating to the conspiracy. * * *

"* * * * *"

The statute has since been repealed and replaced by Rule 801(4)(b)(E) of the Oregon Evidence Code. *See* n 5, *infra.*

money"; defendant and Mindi stayed in contact over the next few days; Chris Tucker was murdered on December 12 or 13; the police found no sign of forced entry into Chris' house.

This court and the Oregon Supreme Court have recognized the difficulties inherent in proving the existence of conspiracies:

> "The existence of a conspiracy may be difficult to prove because a conspiracy by its very nature requires secrecy and subterfuge. * * * [I]n many cases, conspiracy can be shown only by circumstantial evidence consisting of the declarations, acts and conduct of the conspirators. * * *" *State v. Brom,* 8 Or App 598, 604, 494 P2d 434, *rev den* (1972).

*See also State v. Ryan,* 47 Or 338, 344, 82 P 703 (1905). As a result, we have repeatedly found "very slight evidence to be sufficient to permit a jury to find a conspiracy." *State v. Parker,* 225 Or 88, 92, 356 P2d 88 (1960); *State v. Van Nostrand,* 2 Or App 173, 465 P2d 909 (1970). While the evidence of conspiracy outlined above may not be overwhelming, we believe that it easily satisfies the liberal *prima facie* requirement of Oregon law.

The second prong of defendant's argument is that, even if the state made a *prima facie* showing of conspiracy, evidence of Mindi's statements was inadmissible, because the statements did not "further" the conspiracy. In defendant's view, a statement furthers a conspiracy only if it "make[s] it more likely" that the goal of the conspiracy will be achieved.

We decline to apply this strict test to co-conspirator's statements for several reasons. First, the statute providing the authority for admission of co-conspirators declarations requires only that the statements "relate" to the conspiracy.[5] Former ORS 41.900. It is true that some of the cases defendant cites recite the rule in its common law formulation: *e.g.,* " '[T]hose declarations only are admissible which are made by a conspirator during the existence of the conspiracy, and in furtherance of it.' " *State v. Ryan, supra,* 47 Or App at 343; *see also State v. Weitzel,* 157 Or 334, 343,

---

[5] *See* n 2, *supra.*

69 P2d 958 (1937). Those cases do not, however, explain what the term "furtherance" means, nor do they provide other guidance to a court attempting to apply the furtherance standard.

■ Moreover, the Oregon courts, in applying former ORS 41.900, have admitted evidence of co-conspirators' statements without requiring that the statements somehow further the goals of the conspiracy. *State v. Farber,* 56 Or App 351, 642 P2d 668 (1982); *State v. Greenwood,* 22 Or App 545, 540 P2d 389 (1975); *State v. Davis,* 19 Or App 446, 528 P2d 117 (1974); *State v. Garrison,* 16 Or App 588, 519 P2d 1295 (1974); *State v. Chase,* 15 Or App 369, 515 P2d 1337 (1973); *State v. Brom, supra; State v. Van Nostrand, supra; see also State v. Caseday,* 58 Or 429, 447, 115 P 287 (1911).[6] We therefore agree with the state that, at the time of defendant's trial, the statements of his co-conspirator were admissible so long as they "related to" the conspiracy.[7] We now turn to the statements themselves.

■ 1. The state introduced evidence that Mindi had told a friend, Brad Carmen, that her husband had been stabbed in bed and joked that she had to share the insurance money with the person who "bumped Chris off." This statement is a virtual description of the objective of the conspiracy; as such, it meets the "relating to" requirement.

---

[6] Dean McCormick observes that the "furtherance" requirement has not been much adhered to:

"Literally applied, the 'in furtherance' requirement calls for general exclusion of statements possessing evidential value solely as admissions, yet in fact more emphasis seems to be placed upon the 'during continuation' aspect and any statement so qualifying in point of time may be admitted in evidence without much regard to whether it in fact furthered the conspiracy. * * *" McCormick, Evidence 26, § 267, (2d ed 1972).

[7] OEC 801(4)(b)(E) does appear to impose a "furtherance" requirement:

"(4) A statement is not hearsay if:

"* * * * *

"(b) The statement is offered against a party and is:

"* * * * *

"(E) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

We are not required in the present case to determine if the rule was intended to change—or does change—existing law.

■ 2. An acquaintance of Mindi's, Becky Moser, testified that she had overheard Mindi (i) trying to telephone defendant the morning after Chris' body was discovered; (ii) tell defendant later that morning that she could not talk because there were people in the room; and (iii) tell her mother that she had lost the key to Chris' house. These statements can be viewed as evidence of Mindi's efforts to communicate with her co-conspirator shortly after the murder and to exculpate herself concerning the unforced entry into Chris' house. Both efforts "relate to" the conspiracy—the latter even "furthers" it.

■ ■ 3. Paula Mannhalter testified that Mindi had told her (i) that defendant had threatened to "pound" Chris if Chris continued to bother Mindi and (ii) that she (Mindi) had told the police that defendant's name was Greg. While the former statement does not relate to the conspiracy, its admission was harmless error. Bennett testified that he had heard defendant threaten several times to hurt or kill Chris if Chris bothered Mindi. Even if Paula Mannhalter's testimony had been excluded, the jury would have received the same information through Bennett's properly admitted testimony. We are therefore convinced that Mindi's statement to Paula Mannhalter could not have had any effect on the outcome of the case. *See State v. Shipp*, 27 Or App 675, 557 P2d 244 (1976). The latter statement relates to the conspiracy because it is an attempt by Mindi to hinder the police in their investigation of defendant.

■ 4. The state introduced evidence that Mindi had evaded questions and answered untruthfully when the police asked her about defendant. Her evasive remarks were apparently intended to conceal defendant's and Mindi's relationship and their involvement in the murder. The remarks served to conceal the conspiracy; they therefore "related to" it.

■ 5. Finally, defendant protests the ruling that Mindi's statements to Dave Crenshaw were admissible. Mindi had apparently told Crenshaw that defendant was her "baby" and that she "had to take care of him." We agree with defendant that these statements do not relate to the conspiracy. However, it does not appear that the state introduced evidence of these statements at trial. Even if

the evidence had been introduced, we do not see how it would have prejudiced defendant. The trial court's ruling was therefore harmless error. *See State v. Capitan,* 8 Or App 582, 494 P2d 443 (1972).

Because the state produced *prima facie* evidence of a conspiracy between Mindi and defendant and because each challenged statement either related to the conspiracy or was harmless, defendant is not entitled to a new trial on account of the conspiracy evidence.

Reversed and remanded for a new trial.[8]

---

[8] Three other errors assigned by defendant do not require discussion.