Argued and submitted February 13, reversed and remanded for new trial July 22,
State's reconsideration denied October 2, Tucker's reconsideration denied
November 20, both petitions for review pending 1987

## STATE OF OREGON,
*Respondent,*

*v.*

## MINDI MARIE TUCKER,
*Appellant.*

(85-0025; CA A36725)

740 P2d 182

Wayne Mackeson, Portland, argued the cause for appellant. With him on the brief was Des Connall, Portland.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Richardson and Van Hoomissen,* Judges.

WARDEN, P. J.

---

* Van Hoomissen, J., *vice* Young, J.

## WARDEN, P. J.

Defendant appeals her conviction for murder, ORS 163.115, assigning 18 errors. We reverse.

Defendant was indicted, together with Craig Pottle, for the December 14, 1980, murder of her estranged husband. In a pretrial appeal by the state, we affirmed the suppression of all evidence which the state obtained through wiretaps of calls made to and from defendant's telephone during a six-week period after the homicide. The wiretaps were not obtained in accordance with ORS 133.724, which authorizes wiretaps under certain circumstances, and they were suppressed pursuant to ORS 133.735 and ORS 165.540. *State v. Tucker,* 62 Or App 512, 662 P2d 345, *rev den* 295 Or 618 (1983); *see also State v. Pottle,* 296 Or 274, 677 P2d 1 (1984). At trial, the court admitted evidence of certain of those unlawfully obtained wiretaps for impeachment purposes.

■ Defendant first argues that ORS 165.540 and ORS 41.910 make no exception for the introduction of unlawfully obtained wiretaps for purposes of impeachment.[1] The state argues that, because Oregon's wiretap statutes, ORS 133.721 to ORS 133.739, were adopted to bring state law into line with federal standards in Title III of the 1968 Omnibus Crime Control Act, 18 USC §§ 2510-2520, we should look for guidance to federal law, which allows such impeachment use, when construing the Oregon statutes. We agree with defendant.

ORS 133.735(1) provides:

"Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the state, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted under ORS 133.724, or evidence derived therefrom, on the grounds that:

"(a)   The communication was unlawfully intercepted;

"(b)   The order of authorization or approval under which it was intercepted is insufficient on its face; or

"(c)   The interception was not made in conformity with the order of authorization or approval."

---

[1] The state's argument that defendant has not preserved any error in regard to those statutes has no merit and requires no discussion.

ORS 165.540 prohibits wiretapping, "except as otherwise provided in ORS 133.724 * * *." Subsection (1) provides in part:

"[N]o person shall:

"* * * * *

"(e)   Use or attempt to use, or divulge to others any conversation, telecommunication or radio communication obtained by any means prohibited by this section."

ORS 41.910(1)(a) provides:

"Evidence of the contents of any wire or oral communication intercepted:

"(a)   In violation of ORS 165.540 shall not be admissible in any court of this state, except as evidence of unlawful interception."

The relevant exclusionary provisions of ORS 165.540 and ORS 41.910 both predate by two decades the legislative overhaul of Oregon's wiretap statutes in Or Laws 1979, ch 716.[2] Furthermore, ORS 165.540 and ORS 41.910 have no analogues in the federal exclusionary provisions, 18 USC §§ 2515 and 2518.[3] We therefore conclude that we must construe

---

[2] The exclusionary language of ORS 165.540 was enacted by Or Laws 1959, ch 681, § 2, and that of ORS 41.910 was enacted by Or Laws 1955, ch 675, § 6. ORS 41.910(1)(a) was amended in 1979 by adding the phrase "except as evidence of unlawful interception." Or Laws 1979, ch 716, § 12.

[3] 18 USC § 2515 provides:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

The state argues that ORS 41.910 is substantively identical to § 2515, because both use broad prohibitive language. Section 2515, however, concerns the use of lawfully obtained wiretap evidence and contained a general prohibition on the use of unlawfully obtained wiretap evidence, whereas ORS 41.910 is concerned *only* with unlawfully obtained wiretap evidence. The significant difference between the wording of the Oregon and federal statutes further convinces us that federal construction of § 2515 is not relevant to the construction of ORS 41.910.

18 USC § 2518(10)(a) provides, in part:

"Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter,

the Oregon statutes independently of the federal law.[4]

■    In construing statutes, our function is to give effect to the intent of the legislature. ORS 174.020. The most persuasive evidence of that intent is the words of the statute themselves. *Whipple v. Howser,* 291 Or 475, 480, 632 P2d 782 (1981). Both provisions at issue contain mandatory exclusionary language. With regard to ORS 165.540, we have stated that "[i]n order to be available for use, the wiretaps *must* have been performed in accordance with ORS 133.724 * * *." *State v. Tucker, supra,* 62 Or App at 522-23. (Emphasis supplied.) The legislature provided no exception in ORS 165.540 that would allow the use of wiretap evidence for *any* purpose if that evidence was not obtained in accordance with ORS 133.724. Similarly, ORS 41.910(1)(a) prohibits the admission of unlawfully obtained wiretap evidence in any court of this state, "except as evidence of unlawful interception." The legislature made no exception for any other use. Its express provision for only one exception indicates that it meant not to make others.

■    The legislature itself has provided that our duty is "simply to ascertain and declare what is, in terms or in substance, contained [in a statute], *not to insert what has been omitted, or to omit what has been inserted * * *.*" ORS 174.010. (Emphasis supplied.) To interpret ORS 165.540 and ORS 41.910 to permit the use of unlawfully obtained wiretap evidence for impeachment, when neither the statutes nor their legislative history suggests that use, would be "to insert what has been omitted." Due regard for the legislative mandate

---

or evidence derived therefrom, on the grounds that—

    "(i)   the communication was unlawfully intercepted;

    "(ii)   the order of authorization or approval under which it was intercepted is insufficient on its face; or

    "(iii)   the interception was not made in conformity with the order of authorization or approval."

ORS 133.735(1) is virtually identical to that section. Our holding here, however, is not based on ORS 133.735(1), and any interpretation of § 2518(10)(a) is therefore irrelevant to our decision.

   [4] Even if ORS 165.540 and ORS 41.910 were modeled after the federal exclusionary provisions, we may make an independent construction of the Oregon statutes. *See State v. Pottle, supra,* 296 Or at 287-89.

dictates against a judicially supplied exception to those stat-
utes. We hold that those statutes, independently of each other
and together, bar the use of wiretap evidence obtained in
violation of ORS 133.724 for impeachment purposes.

This result is not inconsistent with our decision in
*State v. Mills,* 76 Or App 301, 710 P2d 148 (1985), *rev den* 300
Or 546 (1986), which held that to prohibit impeachment use of
*Miranda*-violative statements would countenance perjury and
impugn the integrity of the judicial system. *Mills* held only
that the *constitution* does not prohibit the use of statements
taken in violation of *Miranda* rights for the purpose of
impeachment. Nothing in that decision indicates that the leg-
islature could not, as a matter of policy, adopt a stricter stan-
dard.

The Supreme Court has previously noted that the
legislature intended more protection for citizens from wire-
taps than did Congress and that we "must carry out the legis-
lature's concern for privacy as much as the aim of law
enforcement." *State v. Pottle, supra,* 296 Or at 287. The legis-
lature has enacted the mandatory exclusionary provisions of
ORS 165.540 and ORS 41.910 to protect citizens from the
perceived inherent dangers of wiretapping. It has decided, as
one method of protecting citizens from those dangers, to
require the complete and total exclusion of evidence gained by
violating the wiretap statutes. The exclusion of such evidence,
even for impeachment purposes, furthers the legislature's pur-
pose to protect the integrity of the criminal justice system and
to limit chances for police misconduct.[5]

■      We address defendant's other assignments of error,
because the issues may arise on remand. She contends that the
trial court erred in admitting a statement that she made on
December 14, 1980, to Detective Sheeland. She argues that,
because the statement was a product of custodial interroga-
tion that was not preceded by advice of her *Miranda* rights,
the statement should have been suppressed. The sole issue
here is whether defendant was in custody when the statements
were made. The state argues that she was not in custody,

---

[5] Because our holding is based on the Oregon statutes, we need not consider
defendant's arguments concerning the federal statutes and the Oregon and federal
constitutions.

citing *Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977). We agree with the state.

In *Mathiason,* the defendant voluntarily went to a police station after a police officer requested that he do so. On arrival, he was told that he was not under arrest but that he was suspected of having committed a burglary. After the officer falsely told the defendant that his fingerprints had been found at the burglary scene, and within five minutes after the defendant arrived at the station, he confessed to the burglary. He was then advised of his *Miranda* rights. He left the station after being informed that he was not being arrested but that the case would be referred to the district attorney. The court held that the confession need not be suppressed because "[the defendant] was not in custody 'or otherwise deprived of his freedom of action in any significant way.'" 429 US at 494, *quoting Miranda v. Arizona,* 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

In this case, defendant voluntarily, and without reluctance, complied with a police officer's request that she accompany him to the sheriff's office. No force, threats or promises were employed. She was asked to wait in a room in the basement normally used by police officers for coffee breaks. Although it is disputed whether she was ever told that she was not under arrest and was free to leave if she wanted, she does not deny that she neither asked to leave nor to use a telephone. She was interviewed approximately two hours after her arrival at the sheriff's office, and she spoke openly with Sheeland and the other officers present. There is no evidence of any compulsion. She was never placed under arrest, and she left freely after consenting to being fingerprinted. As the Supreme Court did in *Oregon v. Mathiason, supra,* we hold that defendant was not in custody "or otherwise deprived of [her] freedom of action in any significant way." Admission of the statement was not error.

Defendant also assigns error to the admission, as excited utterances under OEC 803(2), of certain hearsay statements that the murder victim made to his neighbor McLagan.[6]

---

[6] On December 8, 1980, after defendant and the victim had separated, Pottle and another man allegedly threatened the victim with bodily harm if he did not leave defendant alone. McLagan testified that, on December 12, after the victim saw Pottle's car parked a few houses away from his, he pointed out the car to McLagan and said it belonged to the persons who had threatened him.

We agree that that ruling was error,[7] because the event that precipitated the statements was not startling. We also reject the state's argument that the statements were independently relevant regardless of their truth or falsity and were thus outside the hearsay rules.

We have considered defendant's remaining assignments and conclude that they lack merit.

Reversed and remanded for a new trial.

---

[7] That error, however, would not in itself require reversal, because we conclude that, standing alone, it would have been harmless. *See State v. Miller,* 300 Or 203, 220-21, 709 P2d 225 (1985), *cert den* 476 US ____ (90 L Ed 2d 339) (1986).