Argued and submitted June 28, affirmed November 13, 1991, reconsideration denied April 15, petition for review pending 1992

# STATE OF OREGON,
*Respondent,*

*v.*

# MINDI MARIE TUCKER,
*Appellant.*

## (85-0025; CA A63477)

820 P2d 834

Wayne Mackeson, Portland, argued the cause for appellant. With him on the brief was Des Connall, P.C., Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Rives Kistler, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Deits and De Muniz,* Judges.

RICHARDSON, P. J.

---

* De Muniz, J., *vice* Newman, J., deceased.

## RICHARDSON, P. J.

Defendant appeals her conviction for the murder of her husband. The state's theory of the case was that defendant and her accomplice, Craig Pottle, conspired to kill the victim and to share his life insurance proceeds. There have been two prior appeals in this case. In the first, we affirmed the trial court's pretrial order suppressing unlawfully obtained wiretap evidence, acquired by a police monitor of defendant's telephone during the six-week period after the murder. *State v. Tucker,* 62 Or App 512, 662 P2d 345, *rev den* 295 Or 618 (1983); *see also State v. Pottle,* 296 Or 274, 677 P2d 1 (1984). After that decision, defendant was tried and convicted and brought the second appeal. We held, and the Supreme Court eventually agreed, that, under ORS 165.540 and ORS 41.910, as they read at the time of the wiretaps, the unlawfully obtained evidence could not be used for impeachment, as well as being inadmissible as direct evidence of guilt. The essence of our reasoning was that the statutes precluded *any* evidentiary use of unlawful wiretaps, with one exception that is not relevant here. Consequently, defendant's conviction was reversed and remanded. *State v. Tucker,* 86 Or App 413, 740 P2d 182 (1987), *vacated and remanded,* 305 Or 43, 749 P2d 576, *on remand,* 90 Or App 506, 753 P2d 427 (1988), *aff'd* 307 Or 386, 768 P2d 397 (1989). This appeal is from defendant's conviction at the trial following the remand.

Pottle died before the second trial. However, the state produced Richard McManus, a close friend of Pottle's, who testified essentially that Pottle had confessed to him and had described the conspiracy between himself and defendant. In a pretrial proceeding, defendant moved

> "for an order permitting defendant to introduce as evidence the tape and a transcript of the intercepted telephone conversation between McManus and defendant on December 30, 1980, for purposes of impeachment of McManus while at the same time excluding all of the other wire-tap evidence as previously ordered by the appellate court in this case."

The tape and transcript defendant sought to use were of an intercepted telephone conversation between her and McManus that, she maintains, would support an inference contradictory to his testimony concerning whether and when Pottle had confessed to him. The evidence that she sought to

exclude included three other wiretap tapes that would have allowed the contrary inference or bolstered McManus' testimony.

■   The trial court ruled that the evidence could not be introduced, and defendant assigns error to that ruling. She contends, first, that a correct reading of the opinions in the earlier appeals does not compel the conclusion that, under the statutes, none of the unlawfully obtained wiretap evidence may be admitted for any purpose. She is wrong. Her more strongly urged argument is that, if the statutes do preclude her use of the tape to impeach McManus, her rights under the Confrontation Clauses of the state and federal constitutions are violated.

■   In *State v. Mendez*, 308 Or 9, 20-21, 774 P2d 1082 (1989), the court noted that the exclusion of evidence that is inadmissible under state law does not violate the Sixth Amendment confrontation right if it is "lacking in reliability." We conclude that the same is true of the confrontation right delineated in Article I, section 11, of the Oregon Constitution. *See State v. Campbell*, 299 Or 633, 705 P2d 694 (1985).

The proffered evidence here not only lacks reliability, but was structured by defendant to be as unreliable as possible. She sought to use one of several tapes that bore on the same factual proposition and to preserve suppression of the others. The Confrontation Clauses were not designed to enable a defendant to lead the factfinder in a search for falsehood. The opposite is their purpose, *see Dutton v. Evans*, 400 US 74, 89, 91 S Ct 210, 27 L Ed 2d 213 (1970), and we reject defendant's first assignment.

The next group of assignments that we address challenge the court's refusal to give lesser included offense instructions on manslaughter and on criminally negligent homicide. Defendant argues that this case is indistinguishable from *State v. White*, 303 Or 333, 736 P2d 552 (1987), where the Supreme Court adhered to the rule that requested lesser included offense instructions need only be given when the evidence rationally would allow a factfinder to convict a defendant of the lesser offense rather than the greater. However, the court also held in *White* that the evidence there did

support the giving of the lesser included offense instruction. The defendant and two other persons were charged with aggravated murder, carried out by wiring the victim's vehicle with explosives. The defendant did not participate in the wiring of the vehicle, but participated with the two accomplices in various acts that furthered the conspiracy. There was evidence that he attempted to dissuade his accomplices from killing the victim.

The Supreme Court adopted the following part of Chief Judge Joseph's dissent to our decision in the appeal, 75 Or App 722, 731-32, 707 P2d 1267 (1985):

" 'Defendant's claim was not that he was absolutely unconnected with the events; his theory was that his involvement was so peripheral that it did not give rise to the highest level of criminal accountability. This is not a case like *State v. Miller,* 53 Or App 493, 632 P2d 493 (1981), where the defendant's *only* defense — that he was not at the scene of the crime — had no bearing on what the crime was. The factfinder here, unlike the factfinder in *Miller,* could have inferred that the truth about the nature and extent of defendant's involvement in the crime lay somewhere between defendant's testimony and the state's theory. The majority applies a rigid test, under which a defendant's testimony is insufficient to require the giving of a requested lesser included offense instruction unless the defendant all but says that he did exactly what the requested instruction describes. I do not read [*State v. Washington,* 273 Or 829, 543 P2d 1058 (1975),] or its progeny as requiring that a defendant *confess* to a lesser included offense in order to have the jury instructed on it.

" 'It is of particular importance here that the difference between the state's theory and defendant's bears not only on what events transpired but on what defendant's mental state was. The principal basis for defendant's argument that the jury should have been given the manslaughter instruction is that it could have found that he acted recklessly rather than intentionally. The mental state of a criminal defendant is a uniquely factual question and, whatever logic the [*State v. Palaia,* 289 Or 463, 614 P2d 1120 (1980),]-*Washington* rule might have in other contexts, I strongly question whether the rule can properly be applied to refuse a requested lesser included offense instruction when the dispute over the degree of the defendant's guilt turns on the mental state with which he acted.' (Emphasis in original.)" 303 Or at 349-50.

Defendant reasons:

"In the instant case, the same rationale applies. The defense was not that defendant was completely unconnected with the events in question. She was associated with Pottle, [others] and McManus. She testified that she became aware, prior to the homicide, that Pottle had threatened to kill her husband in the parking lot on Monday, December 7. She was present in the apartment afterwards at the time when [another] claimed that the agreement had been made. The jury could have inferred that the nature and extent of defendant's involvement in the crime lay somewhere between her testimony and the State's theory of the case. Indeed, the jury could have accepted or rejected any number of combinations of the testimony of [other witnesses] and McManus.

"As in *White,* defendant here denied that she ever intended or plotted with others to cause the death of her husband. The issue was defendant's mental state and not, as the prosecutor argued, the mental state of the person who actually committed the homicide."

■ The state responds, correctly, that unlike in *White,* nothing that the evidence showed here could have supported a finding of guilt of any degree of homicide other than the one charged. If defendant had persuaded the jury that she did only what she claims to have done, she would have been peripherally involved in the *events,* but not in any way that could give rise to criminal accountability for their culmination. No finding of a culpable mental state less than the one necessary for murder could rationally have been found if, as it did, the jury believed that defendant conspired with Pottle to kill the victim. Under the evidence, she was guilty of murder or of no homicidal act, and the refusal to give the instructions was not error.

Defendant also contends that the court erred by allowing McManus' hearsay testimony concerning Pottle's admissions. She argues that the testimony did not qualify under either of the two theories for its reception: as a declaration against penal interest or as a statement of a co-conspirator. We need address only the first theory. If the declarant is unavailable, OEC 804(3)(c) makes admissible hearsay evidence of

"[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest,

or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

In *State v. Lissy*, 85 Or App 484, 494-95, 737 P2d 617, *aff'd* 304 Or 455, 747 P2d 345 (1987), we left open the question of whether "corroborating circumstances" must be established to support the admission of inculpatory as well as exculpatory declarations against penal interest. Defendant contends that such a showing should be required here, because McManus was not trustworthy.[1] However, that begs the question. Defendant had and, presumably, took opportunities to assail McManus' credibility. Under the evidentiary rule, whether the particular testimony was admissible depends on the nature of the out-of-court statement, not the credibility of the witness. It expressly makes hearsay evidence of statements against penal interest admissible and expressly requires corroboration only of exculpatory statements. Accordingly, the evidence was admissible under OEC 803(3)(c).

Defendant also asserts that its admission violated her confrontation rights. Hearsay evidence does not offend the Confrontation Clauses if the declarant is unavailable and if the statements have "adequate indicia of reliability." *Ohio v. Roberts*, 448 US 56, 66, 100 S Ct 2531, 65 L Ed 2d 597 (1980). "[R]eliability can be inferred where the evidence falls within a firmly rooted hearsay exception, but in other cases there must be particularized guarantees of trustworthiness." *State v. Farber*, 295 Or 199, 208-09, 666 P2d 821 (1983). In *State v. Moen*, 309 Or 45, 65, 786 P2d 111 (1990), the court noted with approval "*State v. Wyss*, 124 Wis 2d 681, [709-10,] 370 NW2d 745, 757-59 (1985) ('the question of whether a hearsay exception is "firmly rooted" does not turn upon how long the rule

---

[1] We assume, without deciding, the truth of defendant's premise that there was no showing of "corroborating circumstances." We reject without discussion defendant's argument that, as a matter of substance, the statements were not against the declarant's penal interest.

has been accepted but rather how solidly it is grounded on considerations of reliability and trustworthiness * * *')." OEC 803(3)(c) is grounded on considerations of reliability and trustworthiness. It makes the evidence admissible because a "reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." The exception is firmly rooted, and the admission of the evidence did not violate defendant's confrontation rights under either constitution.

Defendant's remaining assignments and arguments have either been resolved in the earlier appeals, to which we adhere, or do not require discussion.

Affirmed.